Teddy Lee COSBY, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Christopher Charles WALLS, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Nos. 86–SC–378–MR, 86–SC–385–MR.

Supreme Court of Kentucky.

June 8, 1989.

As Modified on Denial of Rehearing
Sept. 28, 1989.

J. David Niehaus, Deputy Appellate Defender, Jefferson Dist. Public Defender, Louisville, for appellant, Cosby.

Larry H. Marshall, Rodney McDaniel, Asst. Public Advocates, Frankfort, for appellant, Walls.

Frederic J. Cowan, Atty. Gen., David Smith, Carol C. Ullerich, Asst.Attys.Gen., Frankfort, for appellee.

## OPINION OF THE COURT

Cosby and Walls were indicted and tried together on charges of robbery, kidnapping and murder. Each was found guilty by jury verdict on all charges, and, pursuant to the jury's recommendation regarding punishment, each was sentenced to twenty years imprisonment for Robbery I, the death sentence for Murder, and a second death sentence for Kidnapping. They have appealed separately as a matter of right to our Court alleging numerous errors relating both to the guilt phase and to the sentencing process. Because some of the numerous claims of error are congruent or reciprocal, we decide both cases in a single opinion as a matter of judicial economy.

On the night of November 25, 1984, Kevin Miller, Assistant Manager at the Applegate's Landing Restaurant in Louisville, Ky., was robbed shortly after the restaurant was closed, and then abducted and murdered. Two days later Walls, who was being questioned about the robbery and Miller's disappearance, directed police to the place where the body was found, a pond at Fisherman's Park, about seven or eight miles from Applegate's Landing Restaurant, and then made a statement.

The victim had six stab wounds in the back and chest, and his throat had been slashed. His fingertip had a fresh cut covered by a Band–Aid, and there was a hemorrhage beneath the scalp from a blow behind the right ear. A boning knife, identified as the murder weapon, was found stuck in the mud nearby.

The Restaurant's safe had been emptied, and cash register tapes had been removed from a desk inside the office. The victim's car was still parked outside. Blood found on the safe and on the desk matched the victim's blood type and was consistent with the victim's freshly cut finger. There was also type "B" blood found on a bank deposit bag, which is consistent with Cosby's blood type.

Walls gave the police a taped statement confessing to many of the details concerning the planning and execution of the robbery, kidnapping and murder as carried out by him and Cosby. In his statement Walls claimed that as the time approached to kill the victim he changed his mind and Cosby alone stabbed and slashed the victim to death. Walls then helped Cosby throw the body into the pond.

There are thirty different claims of error asserted in the Brief filed on behalf of Walls, and thirty-five claims of error asserted on behalf of Cosby. In Walls' case only four of the alleged errors were preserved by contemporaneous objection as required by RCr 9.22, and as required for instructions by RCr 9.54(2). *See also* RCr 10.12. Likewise, in Cosby's Brief the claims of error are largely unpreserved, particularly so with reference to the prob-

lems as to Cosby generated by a joint trial and so-called *"Bruton"* issues. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Commonwealth urges this Court to reconsider the position stated in *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, 674 (1984), holding "that in a death penalty case every prejudicial error must be considered, whether or not an objection was made in the trial court." *See also Stanford v. Commonwealth*, Ky., 734 S.W.2d 781, 783 (1987), to the same effect. This position is generated by KRS 532.075, the statute specifying the duties of our Court in reviewing death penalty cases, which states in pertinent part that "[t]he Supreme Court shall consider ... any errors enumerated by way of appeal." The Commonwealth argues that such consideration should be limited to deciding whether the issue was preserved by contemporaneous objection, and, if not, review should go no further. We do not agree, nor do we believe that this statute oversteps the line between judicial and legislative power. It is a function of the General Assembly to say when and if the death penalty shall be imposed, and this includes the right to prescribe the special type of review of punishment and errors enumerated by way of appeal prescribed in KRS 532.075, limited only by the Kentucky Constitution, the United States Constitution, and the decisions of the United States Supreme Court.

The idea of imposing a higher standard of review in cases where the death penalty has been imposed did not originate with our Court, nor indeed with our Kentucky General Assembly. Its genesis is the opinions of the United States Supreme Court which has stated in many cases that "death is a different kind of punishment from any other" invalidating procedural rules that tend to "diminish the reliability of the sentencing determination," and "of the guilt determination" as well. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392, 403 (1980). Because of the "qualitative difference" from a crime punished by a term of years, "there is a corresponding difference in the need for reliability...." *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944

(1976). Our statute and our standard of review are but a codification of the United States Supreme Court mandate.

 However, there appears to be some need for clarification. Contrary to the Commonwealth's suggestion, we have never suggested that the rules of preservation do not apply "at all" in capital cases. Nor do we interpret KRS 532.075(2) as requiring "total abandonment of the rules of preservation." On the contrary, *Ice* specifies only that *"prejudicial* error" must be reviewed regardless of contemporaneous objection, and we hasten to reaffirm that this means errors where there is no reasonable justification or explanation for defense counsel's failure to object, tactical or otherwise, and the totality of circumstances persuades this Court that the defendant may not have been found guilty of a capital offense or the death penalty may not have been imposed but for the unpreserved error.

 Unfortunately, there is one such error in these proceedings. The strongest evidence against Cosby was inextricably bound up in the statement by his codefendant, Walls, so much so that deleting or redacting Cosby's name when the Walls' statement was read to the jury could not possibly have cured the prejudicial effect of this statement against Cosby. We are compelled to conclude that Cosby was so badly prejudiced by the failure to provide separate trials that his convictions must be reversed. In the peculiar circumstances of this case the jury could not individualize Cosby in his relation to the mass of evidence represented by Walls' statement. Ultimately, when this statement was being used in closing argument to imply Cosby was the killer, the court admonished the jury that Walls' statement was not evidence against Cosby, but this was as likely to compound the error as to cure it.

The Commonwealth's Brief conceded that the case against Cosby, while enough to submit to a jury, was "not overwhelming." It consisted of circumstantial evidence that he, like Walls, was an employee of Applegate's Landing Restaurant and in

rather desperate financial circumstances. Cosby admitted that he was with Walls on the night in question. He had driven to Walls' apartment about nine that evening, and left with him, returning sometime around 11:30 p.m. He was seen by an eyewitness in Applegate's parking lot sitting in Walls' car shortly before closing time. The drop of type "B" blood on the money bag, matching Cosby's blood type was further evidence against him. Perhaps most critically, after he returned with Walls to Walls' apartment, he was seen by Walls' wife removing a small box from the back of Walls' car, appearing to be dividing up something, and then putting the box with the remainder in it in his car before leaving.

The victim's girlfriend testified that Walls (the man Cosby was with) gained entry into the Restaurant on the pretext of needing to get "some papers out of my locker" just as the Restaurant was closing, at 11:00 p.m. This evidence, taken together with physical evidence establishing the robbery, the abduction and the murder, would have been sufficient to support Cosby's conviction in a separate trial where Walls' statement would not be part of the evidence. While circumstantial and not overwhelming, the individualized evidence against Cosby is ample to meet the test of proof sufficient to induce conviction of guilt beyond a reasonable doubt of all the elements of the crimes charged. *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The fundamental premise in *Bruton v. United States, supra,* is that the confession of a codefendant when utilized as evidence in a joint trial is prejudicial hearsay as to the nonconfessing defendant to the extent that it incriminates him, and cannot be used unless the name of the nonconfessing defendant can be so redacted or deleted that its use is harmless beyond a reasonable doubt. Otherwise, it violates the accused's fundamental right, guaranteed by the Sixth Amendment, to be confronted by the witnesses against him. We are cognizant, indeed appreciative, of the recent United States Supreme Court decision in

*Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176, 187 (1987), extolling the value of joint trials to enhance "both the efficiency and the fairness of the criminal justice system." This was a case where one defendant, but not both, made incriminatory statements which, when properly redacted, were used as evidence. But the criminal law to be credible must be concerned with substance, not to be confused with empty formality. The rule in *Richardson v. Marsh,* as indeed the principle in its precursor from our state, *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), is that a joint trial utilizing a properly redacted statement is appropriate where given the totality of the circumstances no substantial prejudice will result. It is appropriate where the statement does not provide details that point unerringly to the nonconfessing defendant. Indeed, although inappropriate, it is not reversible error where the proof against the nonconfessing codefendant is so overwhelming that no possible prejudice resulted, the "harmless beyond a reasonable doubt" standard that applies to constitutional error. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967).

Unfortunately, from the record before us it is evident that such was not the case here. In his opening statement the Commonwealth Attorney told the jury that he was going to show them that Cosby had the knife in his hand, which he could only do based on Walls' statement. Walls' counsel made statements in closing argument that went so far towards implying that Cosby was the "blank" referred to in Walls' statement that the court felt compelled, on its own initiative, to advise the jury at that time that it was "not to consider the statement ... as evidence against Mr. Cosby in this case." In ruling on Cosby's motion for a directed verdict the trial court made statements suggesting that the evidence confirming Cosby's guilt was inextricably bound in Walls' statement. Apparently, even the trial judge could not individualize Cosby in his relation to the mass of

evidence. The only responsible conclusion is that in present circumstances this cannot be done. The proof is overwhelming as to Cosby, but only because Walls' statement is there to incriminate him. Our responsibility to uphold the criminal justice system transcends our aversion to granting this malefactor a new trial wherein the principal evidence against Cosby will never see the light of day unless Walls takes the stand to testify against him. If, as Walls claims, Cosby was more blameworthy than he, perhaps this can be arranged at the next trial.

These same considerations of prejudice do not obtain in the Walls case. Like Cosby, Walls also failed to pursue a severance as provided in RCr 9.16. Unlike Cosby, there was overwhelming evidence that Walls was guilty as a participant in the robbery and the abduction, and in the murder as well, although his statement shifts blame to Cosby for going through with the murder when he had changed his mind about killing the victim.

■ Nevertheless, there is at least one critical error in Walls' case, once again precipitated by the joint trial, and this issue was preserved. Over objection Walls' wife was forced to testify on the theory that her testimony was competent as to his codefendant Cosby even though under KRS 421.210(1) she could not be compelled to testify against her husband. But her testimony provided important details incriminating *both* defendants. It covered their activities before and after the crimes took place and provided crucial evidence about how, after they returned in Walls' car around 11:30 or 11:45 p.m., first they sat together in the car talking and then Cosby got something out of the backseat of Walls' car and put in the trunk of his own car. She also gave details about the Walls family's bad financial circumstances which reflected on motive and she testified about how Walls washed his tennis shoes after he came home that night.

The trial court limited the Commonwealth in questioning Mrs. Walls only on the subject of "communications that oc-

curred between herself and Mr. Walls when no one else was present."

As we explained in *Estes v. Commonwealth*, Ky., 744 S.W.2d 421 (1987), "KRS 421.210(1) provides two separate rules:"

"1) A Testimonial Disqualification—A husband and wife are disqualified from giving testimony regarding 'confidential communications between them during marriage,' as in the former common law disqualification.

2) A Testimonial Privilege—'Further, neither may be compelled to testify for or against the other,' similar to the privilege against self-incrimination." *Id.* at 424.

Thus, there are *two prongs* to this statute, the second prong being a "Testimonial Privilege," and, as we stated in *Estes* "we must recognize [the wife's] right to refuse to give testimony of any kind against her husband, without regard to whether it is a confidential communication." *Id.* at 425.

In *Maddox v. Commonwealth*, Ky., 503 S.W.2d 481 (1973), this Court analyzed a factual and legal situation squarely in point. The brothers Maddox were jointly indicted and tried for stealing cattle. The prosecutor called Joyce Maddox, wife of Billy, who was required to testify against her will "on the theory that her testimony would be competent as against Jimmy," and we stated this was "reversible error as to appellant Billy Maddox as it is impossible to limit the effect of her testimony to Jimmy Maddox alone." *Id.* In the present case the testimony from Walls' wife implicated Walls as well as Cosby and added critical weight to the prosecution's case because it corroborated his incriminating statement. This is an error that would never have occurred had the Commonwealth had the foresight to require separate trials.

Walls also claims he was prejudiced by the joint trial because Cosby testified and Walls did not, and then Walls' counsel was denied an opportunity to offer an explanation as to why he chose not to testify. Further, Walls claims he was prejudiced because the edited version of his statement read to the jury, deleting Cosby's name and

replacing it with the designation "blank" watered down the exculpatory and mitigating value of those self-serving portions of his statement blaming Cosby for going through with the murder after Walls no longer wanted to kill their victim. These arguments, in themselves, are not substantial. Nevertheless, they represent problems that do not occur with separate trials.

The appellants have received two separate death penalties, one for murder and one for kidnapping. The appellants make a technical argument that neither the indictment nor the instructions presented an issue of capital kidnapping. First they point to the indictment as insufficient because the offense of kidnapping, as set out in Count II, does not allege the facts necessary to elevate the crime to status as a capital offense. Kidnapping is only a "capital offense when the victim is not released alive or when the victim is released alive but subsequently dies as a result of" certain conduct by the kidnappers as specified in the statute. KRS 509.040(2). On the other hand, the heading above the indictment said "Capital Kidnapping," and the Commonwealth filed a notice of aggravating factors as required by KRS 532.025(1) advising:

> "[T]he Commonwealth will seek the death penalty ... on the theory that the offenses of Murder and Kidnapping were aggravated by the fact that they were committed during the course of a Robbery First Degree."

We need not decide whether the indictment as supplemented by the "notice of aggravating factors" is sufficient since we have ordered new trials and the indictment can, in any event, be amended. And, for the same reason, we need not address the claim of procedural noncompliance appellants assert on grounds that the necessary element to prove capital kidnapping, that "the victim is not released alive," was first presented as a jury issue only at the penalty phase. The appellants were not found guilty of this element at the trial phase. But there was no objection to this trial procedure. If the appellants believe our death penalty statute, KRS 532.025 requires that this factor be found in the guilt

as well as the penalty phase, they may so request at the next trial.

■ A more serious argument arises out of the double death penalty, one imposed for murder and one for kidnapping, when the same act of murder provided the aggravating circumstances in both instances. Because this is a double jeopardy claim it must be considered even though it was not preserved by objection for appellate review. *Phillips v. Commonwealth*, Ky., 679 S.W.2d 235 (1984); *Sherley v. Commonwealth*, Ky., 558 S.W.2d 615 (1977).

■ The gist of the double jeopardy claim is that the same element that enhances kidnapping to capital kidnapping so that the death penalty can be imposed, causing the death of the victim, is also punished by the death penalty a second time as murder.

■ Under KRS 505.020(2)(a) one offense merges with another when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the [other] offense." This is a statutory codification of the *Blockburger* test used by the United States Supreme Court to define violation of the double jeopardy clause of the Fifth Amendment of the United States Constitution. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* rule cannot be applied simply in the abstract. While we could invent abstract scenarios in which a person might be guilty of capital kidnapping although the victim was not murdered, where, as here, the proof relied upon to elevate the offense of kidnapping to capital kidnapping is the proof that the victim was murdered, the offenses merge. The phrase in the capital kidnapping statute, "when the victim is not released alive," refers to the victim's death being caused by some aspect of the kidnapping, not to a fortuitous and unrelated circumstance.

While capital kidnapping required proof of facts not required for murder, murder here did not require proof of any fact not included in capital kidnapping. *Blockburger*, 284 U.S. at 304; 52 S.Ct. at 182.

When the death is related to the kidnapping it is a crime covered by Chapter 507, Criminal Homicide, and punishable as one of the degrees of criminal homicide specified therein. There are two prongs to the double jeopardy principle. A person cannot be twice convicted *or* twice punished for the same murder. In a new trial the Commonwealth may try the appellants for both kidnapping and murder but at the sentencing phase it must elect to seek the death penalty for either kidnapping or murder. Murder and kidnapping merge at the enhancement stage. The additional element that aggravates kidnapping to a capital offense is the murder. The defendant can be convicted and punished for both offenses, but not sentenced to death for kidnapping if he is sentenced to death for murder.

The appellants' remaining claims of error are not substantial. Since there will be a remand, it is not necessary that they be addressed in this Opinion. No remaining claim of error which we might address in this Opinion was challenged by contemporaneous objection. We must assume that at new trials counsel for appellants will feel constrained to object where they deem it appropriate, and they are forewarned that failure to do so places them under a heavy burden in the appellate court.

The convictions of both Cosby and Walls are reversed and both cases are remanded to the trial court for further proceedings consistent with this Opinion.

STEPHENS, C.J., and COMBS, LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., concurs in results only.

VANCE, J., dissents by separate opinion, in which GANT, J., concurs.

VANCE, Justice, dissenting.

Respectfully, I do not agree that the judgment should be reversed as to the appellant Christopher Charles Walls. I concede that his wife was erroneously required to give testimony against him but in view of the detailed statement which he gave concerning his own participation in the crime, I believe that the testimony of his wife was of little consequence in influencing the jury verdict. I concur in the reversal of the judgment against appellant Teddy Lee Cosby but would affirm the judgment against the appellant Walls.

GANT, J., joins in this dissent.