Michael D. ST. CLAIR, Petitioner,

v.

Honorable Hugh W. ROARK, Judge,
Hardin Circuit Court,
Respondent,

and

Commonwealth of Kentucky (Real
Party in Interest),
Respondent.

No. 99–SC–0043–OA.

Supreme Court of Kentucky.

Nov. 18, 1999.

As Modified on Denial of Rehearing
Feb. 24, 2000.

James Gibson, Assistant Public Advocate, Frankfort, Steve Mirkin, Elizabethtown, for Petitioner.

A.B. Chandler, III, Attorney General, State Capitol, Frankfort, David A. Smith, Dana M. Todd, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Michael A. Wright, Assistant Attorney General, Special Prosecutions Division, Frankfort, for Respondents.

### DENYING PETITION FOR A WRIT OF PROHIBITION

COOPER, Justice.

Michael D. St. Clair petitions this Court for a writ of prohibition to preclude the death penalty as a possible punishment in the event he is convicted of kidnapping Frank Brady. He has already been convicted and sentenced to death for Brady's murder and asserts that imposition of the death penalty for Brady's kidnapping would violate the constitutional proscription against double jeopardy. U.S. Const., amend. V, Ky. Const. § 13.

### I. FACTS.

St. Clair escaped from Oklahoma authorities. Most of what the Common-

wealth claims occurred thereafter was provided by Dennis Gene Reese, St. Clair's alleged accomplice, who confessed to his involvement in the subsequent events and agreed to testify against St. Clair. According to Reese, after escaping from jail, he and St. Clair traveled to Colorado where they kidnapped Timothy Keeling and stole Keeling's pickup truck. Keeling was later shot and killed in New Mexico. Reese and St. Clair then drove Keeling's truck through several states before arriving at a rest stop in southern Hardin County, Kentucky. There they spotted and decided to steal Frank Brady's late model pickup truck. They kidnapped Brady and drove him from Hardin County to Bullitt County where he was shot and killed by St. Clair. Reese and St. Clair then returned to Hardin County and set fire to Keeling's truck. Witnesses to the arson gave the Kentucky State Police a description of Brady's truck, which they had observed near the scene of the fire. Based on that description, Trooper Herbert Bennett stopped Reese and St. Clair while they were driving Brady's truck through Hardin County. St. Clair fired two shots at Bennett, one of which penetrated the radiator of Bennett's police cruiser. A high speed chase ensued, but Reese and St. Clair escaped when Bennett's cruiser became disabled as a result of the radiator leak. Reese was ultimately captured in Nevada and waived extradition. St. Clair was captured in Oklahoma.

St. Clair was indicted for the murder of Brady in Bullitt County, where that crime was committed; and for the kidnapping of Brady, the attempted murder of Trooper Bennett, two counts of felony receiving stolen property (both pickup trucks), and second-degree arson (Keeling's pickup truck) in Hardin County, where those crimes were committed. KRS 452.510. While awaiting St. Clair's extradition from Oklahoma, the Commonwealth decided that all of the charges should be joined for trial and obtained an *ex parte* order changing venue of the Hardin County indictments to the Bullitt Circuit Court. Upon completion of extradition proceedings, St. Clair was arraigned in the Bullitt Circuit Court. He moved that the Hardin County charges be severed and returned to the Hardin Circuit Court on grounds that the motion to change venue had not been served on St. Clair as required by KRS 452.220(1), and did not allege that either party would be unable to obtain a fair trial in Hardin County. KRS 452.210; *Evans v. Commonwealth*, Ky., 645 S.W.2d 346 (1982). The motion was granted. St. Clair was then tried and convicted in the Bullitt Circuit Court of the murder of Frank Brady and was sentenced to death. That conviction is not final, but is still on appeal. The Commonwealth now proposes to try St. Clair on the Hardin County indictments and intends to seek the death penalty if he is convicted of Brady's kidnapping. KRS 509.040(2).

St. Clair asserts that to subject him to a second death penalty for Brady's kidnapping would constitute double jeopardy, because (1) the offense of murder for which he has already been sentenced to death is an element of the offense of capital kidnapping, and (2) the imposition of two death sentences for a single course of conduct constitutes double punishment. Of course, if the Commonwealth is prohibited from seeking the death penalty for Brady's kidnapping, and if his conviction or sentence for Brady's murder is reversed on appeal, St. Clair could avoid the death penalty altogether.

## II. PROHIBITION AS AN APPROPRIATE REMEDY.

The Commonwealth asserts that a writ of prohibition is an inappropriate remedy in this case, because St. Clair has an adequate remedy by appeal. St. Clair relies on *Crawley v. Kunzman*, Ky., 585 S.W.2d 387 (1979), in which we held that the right of appeal is never an adequate remedy against a claim of double jeopardy. In *Jones v. Hogg*, Ky., 639 S.W.2d 543 (1982),

*Crawley* was limited to its facts, *i.e.,* the petitioner was trying to prevent a retrial after a previous acquittal of the same charge. In *Jones,* the petitioner had never been acquitted, but was trying to prevent a retrial after three mistrials caused by deadlocked juries.

 The Commonwealth relies on *Haight v. Williamson,* Ky., 833 S.W.2d 821 (1992), *cert. denied,* 507 U.S. 925, 113 S.Ct. 1296, 122 L.Ed.2d 687 (1993), in which we held that the issue as to whether being subjected to a possible death penalty upon retrial after reversal of a previous conviction and death sentence amounted to double jeopardy was "answerable upon appeal," thus not the proper subject of a petition for a writ of prohibition. *Id.* at 824.[1] However, *Haight* and *Jones v. Hogg, supra,* both reiterated the oft-repeated maxim that although a writ of prohibition will issue only in exceptional circumstances, whether to do so lies within the sound discretion of the court in which the writ is sought. *Haight,* 833 S.W.2d at 823; *Jones,* 639 S.W.2d at 543. In fact, despite limiting the holding in *Crawley v. Kunzman* and concluding that the petitioner had an adequate remedy by appeal, the Court in Jones proceeded to address and resolve the merits of the double jeopardy issue raised in that petition. Reading *Crawley, Jones* and *Haight* together, we conclude that although double jeopardy is an appropriate subject for a writ of prohibition, it is not mandatory that it be addressed in that context. The court in which the petition is filed may, in its discretion, address the merits of the issue within the context of the petition for the writ, or may decline to do so on grounds that there is an adequate remedy by appeal. Neither approach is mandatory and the exercise of discretion may well depend on the significance of the issue as framed by the facts of the particular case. Because of the importance of the issue raised

by St. Clair, and because the issue is well framed by the facts of this case, the majority of this Court deems it appropriate to address the issue now rather than delay resolution until a possible appeal.

## III. DOUBLE JEOPARDY.

St. Clair rests the merits of his double jeopardy claim squarely on *Cosby v. Commonwealth,* Ky., 776 S.W.2d 367 (1989), *cert. denied,* 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990), which held that a defendant could not be twice sentenced to death for the murder and the kidnapping of the same victim. In addition to questioning the analysis which led to that conclusion in *Cosby,* the Commonwealth relies on *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) for the proposition that St. Clair waived his double jeopardy claim by moving for and obtaining a severance of the kidnapping charge from the murder trial.

 In *Jeffers,* the defendant was tried and convicted of a greater offense after having been tried and convicted of a lesser included offense. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Jeffers was held to have waived his claim of double jeopardy, because he had successfully resisted the government's motion for joinder and was thereby solely responsible for the fact that he was subjected to separate trials instead of a single trial at which the jury would have been instructed that one offense was a lesser included offense of the other. However, there was no issue of double punishment in *Jeffers.* He was sentenced to the maximum penalty of fifteen years in prison and a $25,000 fine for the lesser offense, then to the maximum penalty of life in prison and a $100,000 fine for the greater offense. Since he was not eligible for parole, *Jeffers,* 432 U.S. at 155, n. 24, 97 S.Ct. at 2218, n. 24, the prison sentences merged; and the Court held that

---

1. Haight was subsequently convicted and sentenced to death. On appeal, his double jeopardy argument was rejected. *Haight v. Com-*

*monwealth,* Ky., 938 S.W.2d 243, 252 (1996), *cert. denied,* 522 U.S. 837, 118 S.Ct. 110, 139 L.Ed.2d 63 (1997).

his maximum fine was limited to the $100,-000 maximum for the greater offense. *Id.,* 432 U.S. at 157–58, 97 S.Ct. at 2220. Thus, *Jeffers* only stands for the proposition that the defendant's resistance to joinder was a waiver of any objection to a trial and conviction of the greater offense after having been tried and convicted of the lesser included offense. *Jeffers* does not stand for the proposition that a resistance to joinder or, as here, a motion to sever constitutes a waiver of double punishment if a defendant is convicted of two offenses, one of which is included in the other. Here, St. Clair makes no claim that his conviction of murder bars his subsequent trial for kidnapping. Rather, he claims only that the imposition of the death penalty for his conviction of Brady's murder bars the imposition of a second death penalty if he is convicted of Brady's kidnapping.

*Cosby v. Commonwealth, supra,* would prohibit the use of Brady's murder as an aggravating circumstance authorizing imposition of the death penalty if St. Clair is convicted of Brady's kidnapping.[2] However, upon re-examination, we have determined that this holding in *Cosby* was grounded upon a false premise, *i.e.,* that the murder of the victim is an element of the offense of capital kidnapping. Having reached that incorrect conclusion, *Cosby* then applied the *"Blockburger* rule," *i.e.,* where the same act or transaction constitutes a violation of two distinct statutory provisions, the test for double jeopardy is whether each provision requires proof of a fact which the other does not. If so, there are two distinct offenses. If not, there is but one offense and double jeopardy precludes two convictions. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *see also* KRS 505.020(2)(a); *Commonwealth v. Burge,* Ky., 947 S.W.2d 805, 811 (1996), *cert. denied sub nom., Effinger v. Ken-*

*tucky,* 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 323 (1997). *Cosby* concluded that since the murder of the victim was the element which enhanced the offense of kidnapping to a capital offense, the murder merged with the kidnapping at the enhancement stage and it would be double jeopardy to impose capital punishment for both offenses.

■■■■ The flaw in this reasoning was the conclusion that the *murder* of the victim is the element which enhances the offense of kidnapping from a class A felony to a capital offense. Not so. It is the *death* of the victim which enhances kidnapping to a capital offense. If the victim's death resulted from, *e.g.,* reckless homicide, or even an accident, the kidnapping would be a capital offense so long as the death was the result of (a) serious physical injuries suffered during the kidnapping; or (b) not being released in a safe place; or (c) being released in any circumstances which are intended, known or should have been known to cause or lead to the victim's death. KRS 509.040(2). St. Clair could have been indicted and convicted of capital kidnapping if Brady had been killed in an automobile accident while being transported from Hardin County to Bullitt County during the course of the kidnapping. However, Brady's death under that circumstance would not alone have authorized imposition of the death penalty. Before the death penalty can be imposed, there must be proof of an aggravating circumstance. KRS 532.025(2). The same is true of the offense of murder, which is a capital offense, KRS 507.020(2), but a conviction of which does not authorize capital punishment absent an aggravating circumstance. KRS 532.025(3). In *Harris v. Commonwealth,* Ky., 793 S.W.2d 802 (1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991), we held that the *murder* of the victim by the kidnapper

---

**2.** The Commonwealth also intends to present evidence of other aggravating circumstances, *viz:* St. Clair's prior record of conviction for a capital offense and substantial history of seri-

ous assaultive behavior, KRS 532.025(2)(a)1; and that the kidnapping occurred while St. Clair was engaged in the commission of first-degree robbery, *Id.* § (2)(a)2.

was an aggravating circumstance "otherwise authorized by law," KRS 532.025(2), which would justify imposition of capital punishment for the offense of capital kidnapping. The offense of murder contains an element, *i.e* ., either intent to kill, KRS 507.020(1)(a), or aggravated wantonness, KRS 507.020(1)(b), which is not required to enhance kidnapping from a class A felony to a capital offense. *See Dillard v. Commonwealth,* Ky., 995 S.W.2d 366, 374 (1999). Thus, there is no *Blockburger* violation in convicting a defendant of both the murder and the capital kidnapping of the same victim and imposing separate death sentences for each conviction. To the extent that *Cosby v. Commonwealth, supra, Wilson v. Commonwealth,* Ky., 836 S.W.2d 872, 890–91 (1992), *cert. denied,* 507 U.S. 1034, 113 S.Ct. 1857, 123 L.Ed.2d 479 (1993) and *Taylor v. Commonwealth,* Ky., 821 S.W.2d 72, 77 (1990), *cert. denied,* 502 U.S. 1100, 112 S.Ct. 1185, 117 L.Ed.2d 428 (1992) *and* 502 U.S. 1121, 112 S.Ct. 1243, 117 L.Ed.2d 475 (1992) hold otherwise, they are overruled.

■ Nor is it double jeopardy to impose a separate penalty for one offense while using the same offense as an aggravating circumstance authorizing imposition of capital punishment for another offense. *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *Tamme v. Commonwealth,* Ky., 973 S.W.2d 13, 40 (1998), *cert. denied,* 522 U.S. 986, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999); *Bowling v. Commonwealth,* Ky., 942 S.W.2d 293, 308 (1997), *cert. denied,* 522 U.S. 986, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997); *Perdue v. Commonwealth,* Ky., 916 S.W.2d 148, 167–68 (1995), *cert. denied,* 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996); *Sanders v. Commonwealth,* Ky., 801 S.W.2d 665, 682 (1990), *cert. denied.* 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991). Thus, the fact that St. Clair was previously convicted and sentenced for Brady's murder does not preclude using the fact of that murder as an aggravating circumstance authorizing imposition of the death penalty for Brady's kidnapping.

■ Finally, the imposition of two death sentences does not constitute double jeopardy *per se.* First, the punishments are not being imposed for the same offenses. Second, even if they were, only one death penalty can be imposed, so there is no possibility of double punishment. We have upheld the imposition of multiple death penalties in a number of cases where a defendant was convicted of crimes against multiple victims. *E.g., Tamme v. Commonwealth, supra; Baze v. Commonwealth,* Ky., 965 S.W.2d 817 (1997); *Foley v.. Commonwealth,* Ky., 953 S.W.2d 924 (1997), *cert. denied,* 523 U.S. 1053, 118 S.Ct. 1375, 140 L.Ed.2d 522 (1998); *Bowling v. Commonwealth, supra; Foley v. Commonwealth,* Ky., 942 S.W.2d 876 (1996), *cert. denied,* 522 U.S. 893, 118 S.Ct. 234, 139 L.Ed.2d 165 (1997); *Haight v. Commonwealth, supra; Bowling v. Commonwealth,* Ky., 873 S.W.2d 175 (1993), *cert. denied,* 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994). There is no basis for a different result where multiple crimes are committed against the same victim. *Cf. Bills v. Commonwealth,* Ky., 851 S.W.2d 466 (1993) and *Van Dyke v. Commonwealth,* Ky., 581 S.W.2d 563 (1979), in both of which a defendant was convicted and separately sentenced for multiple sexual offenses perpetrated against the same victim.

Accordingly, the petition for a writ of prohibition is denied.

GRAVES, JOHNSTONE and KELLER, JJ., concur.

LAMBERT, C.J., and WINTERSHEIMER, J., concur in result only without separate opinion. STUMBO, J., dissents and would hold that the issues in controversy are not yet ripe for adjudication.