Gary Casper McKINNEY, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 1998–SC–0837–MR.

Supreme Court of Kentucky.

Sept. 27, 2001.

As Modified Dec. 20, 2001.

Julie Namkin, Thomas M. Ransdell, Assistant Public Advocate, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General, Susan Roncarti, Assistant Attorney General, Michael G. Wilson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

GRAVES, Justice.

Appellant, Gary Casper McKinney, was convicted in the Pulaski Circuit Court on

three counts of intentional murder, one count of second-degree arson, one count of tampering with physical evidence, and three counts of abuse of a corpse. He was sentenced to death for each murder count, five years for arson, one year for tampering with physical evidence, and twelve months each for the abuse of a corpse charges. For the reasons set forth herein, we reverse the judgment of conviction and remand the matter to the circuit court for a new trial.

## I. FACTS

On April 2, 1995, Appellant's neighbor, David Burton, received a phone call from another neighbor that Appellant's house was on fire. Burton immediately went to Appellant's house, which was engulfed in flames. Approximately thirty minutes after the fire department arrived at the scene, Appellant drove up, watched the fire for a few minutes, spoke with the firemen, and thereafter drove away. During the course of extinguishing the fire, firemen discovered three bodies, an adult and two children. The victims were later identified as Appellant's wife, Shirley Bowles McKinney, and her two children, 11–year–old Brian and 3–year–old Amy.

An autopsy of the three victims subsequently revealed that they had died as a result of gun shot wounds prior to the fire being set in the house. Kentucky State Police inspected the remains of the house and found not only numerous .22 caliber shell casings which were consistent with having been fired from Appellant's gun, but also discovered trace amounts of an accelerant used to start the fire.

On April 27, 1995, Appellant was indicted for the murders of Shirley, Brian and Amy. Following a trial, a jury found Appellant guilty on all charges and recommended three death sentences. Appellant appealed this to this Court as a matter of right. Because the case is being reversed and remanded, we will address only those issues affecting retrial or likely to occur upon retrial.

## II. LAY WITNESS TESTIMONY

Prior to trial, the defense moved to preclude the Commonwealth from offering opinion evidence relating to Appellant's apparent lack of reaction to the death of his family on the day of the fire. In denying the motion, the trial court stated, "The Defendant's demeanor soon after the death of his wife and stepchildren and the destruction of his home is relevant because inferences may be drawn from such evidence . . . . Since the offenses charged are intentional crimes, the intent of the Defendant and the knowledge of the Defendant about the offenses is a relevant consideration."

As a result, at trial the Commonwealth offered the testimony of ten witnesses who described how Appellant acted on the day of the fire. A neighbor testified that Appellant seemed "calm" and that he "acted normal" at the fire scene. Martha Owens, Shirley McKinney's sister, testified that when she broke the news to Appellant about the fire, he "just had his head down and his hands in his pockets," which she said was normal for him. Charles Bowles, Shirley's brother, stated that Appellant had "no reaction," did not "act any different that day than he had any other day," and did not "seem concerned." Several firemen who did not know Appellant testified that his demeanor was "nothing out of the ordinary," "non-emotional, and 'like a normal person.'" Finally, Pulaski County Sheriff Sam Catron, who also did not know Appellant, stated that Appellant was "calm, didn't show any emotion" at the fire scene.

 Appellant argues that the lay witness testimony was irrelevant and prejudi-

cial. He contends that the only purpose of the testimony was to create an implication that he did not show any emotion because he was not saddened by the death of his family and that he was not surprised because he already knew they were dead, presumably because he had killed them prior to setting the fire. Moreover, Appellant contends that the evidence was inadmissible because it invaded the province of the jury as to the "ultimate issue".

While Appellant is certainly correct that his lack of emotion on the day of the fire could be perceived as an inference of guilt, we are of the opinion that the evidence was just as consistent with innocence. In fact, defense counsel emphasized during the cross-examination of several of the witnesses that Appellant was acting normal, which would imply a lack of suspicion or guilt on his part. The jury was free to weigh the credibility of each witness and draw its own conclusions.

We departed from the so-called "ultimate issue" rule in *Stringer v. Commonwealth*, Ky., 956 S.W.2d 883 (1997), *cert. denied*, 523 U.S. 1052, 118 S.Ct. 1374, 140 L.Ed.2d 522 (1998). Nevertheless, the witnesses here merely testified as to their observations of Appellant on the day in question. There was absolutely no testimony as to whether Appellant specifically "looked guilty " or not. The trial court properly allowed the witnesses' testimony.

### III. EXPERT WITNESS TESTIMONY

■ Approximately three weeks before trial, the Commonwealth received notice from the defense that a mental health expert had been retained to testify as to Appellant's lack of emotion about the fire and the death of his family. The Commonwealth moved the trial court to exclude the testimony because the defense had not complied with the twenty-day notice rule set forth in RCr 7.24(3)(B)(i). At a hearing on the Commonwealth's motion, the defense proffered "psychological opinions" that Appellant suffered from Schizoid Personality Disorder, and that one of the characteristics of the disorder was a "restricted range of expressions of emotions in interpersonal settings."

In granting the Commonwealth's motion to prohibit the defense from calling an expert to explain Appellant's lack of emotional response, the trial court did not focus on any failure of the defense to comply with the notice rule. Rather, the trial court held the evidence was not properly admissible because: (1) "It is common knowledge and within the realm of experience of almost every adult that people differ in their reactions to tragic events[;]" and (2) "the use of the opinion that the Defendant had Schizoid Personality Disorder to explain the lack of emotional response contains fallacies which render it unhelpful." The trial court further noted a concern that "dueling psychological experts" would confuse the jury.

■ We are compelled to agree with Appellant that if his failure to have an emotional reaction on the day in question was relevant, which the trial court so ruled, then the fact that he suffers from Schizoid Personality Disorder is also relevant to explain why he possibly did not have any reaction. While the Commonwealth is correct that none of the lay witnesses expressed an opinion as to Appellant's guilt or innocence, their observations that Appellant appeared "calm", "normal," and lacking any emotional response certainly lend themselves to an inference that Appellant was guilty. Therefore, Appellant was entitled to counter that evidence with an expert opinion concerning the potential cause of his lack of emotion. The trial court committed prejudicial error in prohibiting the defense from offering such

evidence. Therefore, we reverse the judgment of conviction on this issue.

## IV. DENIAL OF FUNDS FOR FORENSIC PATHOLOGIST

■ Appellant argues that a crucial issue in his case was the time of death of the victims. At trial, he maintained that when he left the house on the morning of the fire, his wife and step-children were eating breakfast. However, Daniel Owens, a friend of Appellant's who was with him at the time he was arrested, claimed that Appellant admitted to having shot all three victims the night before the fire. As such, when the state medical examiner, Dr. John Hunsaker, informed the defense that he had preserved the stomach contents of the victims following their autopsy, the defense moved the trial court for funds to "contact a forensic pathologist who would be willing to discuss with the defense counsel the ways and means of conducting whatever testing or analysis is necessary on the preserved stomach contents to opine about the approximate time prior to death that these contents would have entered the victims' systems." The motion did not request funds for either actual testing or analysis. The trial court subsequently denied the motion on the grounds that the information sought by Appellant could be addressed by the state pathologist without disclosure of any confidential details of the defense.

■ KRS 31.110(1)(b) states that an indigent defendant is entitled "[t]o be provided with the necessary services and facilities of representation including investigation and other preparation." In addition, KRS 31.185(1) provides:

> Any defending attorney operating under the provisions of this chapter is entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Common-

wealth. If he considers their use impractical, the court concerned may authorize the use of private facilities to be paid for on court order by the county.

This Court has held that the allocation of funds for an independent expert is required only when the defendant has shown those services "reasonably necessary." *Hicks v. Commonwealth,* Ky., 670 S.W.2d 837 (1984), *cert. denied,* 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). The trial court's denial of funds is reviewed under an abuse of discretion standard. *Sommers v. Commonwealth,* Ky., 843 S.W.2d 879, 888 (1992). Furthermore, on appeal, "our review of a trial court's denial of funds pursuant to KRS 31.110 is limited to the reasons actually presented to the trial court." *Dillingham v. Commonwealth,* Ky., 995 S.W.2d 377, 381 (1999), *cert. denied,* 528 U.S. 1166, 120 S.Ct. 1186, 145 L.Ed.2d 1092 (2000).

In this case, Appellant's motion requesting funds stated that the purpose of contacting a forensic psychologist was "at this point in time for consulting only." Moreover, at the time Appellant made the motion, Dr. Hunsacker had specifically stated that he had not tested the victims' stomach contents. As such, the information before the trial court at the time it denied the motion did not create a reasonable necessity for the retention of an independent expert. In *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989), we addressed a similar issue in that the defendant was denied funds for independent psychological and psychiatric experts. In affirming the convictions, we determined that the trial court correctly found that Simmons had stated his need for expert assistance in general terms; that he failed to state the names of the doctors or social workers he wished to contact; that he did not state what he

expected to show or in what manner the requested assistance would benefit his defense; and that he made no challenge to the competency of the state expert or claim that the expert was uncooperative or unavailable for consultation. *Id.* at 395.

We simply cannot conclude that the trial court erred in denying Appellant's request for funds when he offered little more than an undeveloped assertion that the requested assistance would be beneficial. *Id.* Notwithstanding, Appellant had the opportunity to consult with Dr. Hunsacker prior to trial concerning the findings of his autopsy reports and the results of his eventual analysis of the victims' stomach contents, as well as thoroughly cross-examine him at trial. No error occurred.

## V. PSYCHOLOGICAL SCHOOL RECORDS OF DANIEL OWENS

■ Appellant argues that the trial court erred in denying him access to Owens' comprehensive care records and school records. While the trial court did grant discovery of Owens' medical records, as well as an application for social security benefits, the court held, after an *in camera* inspection, that the other records sought were not relevant and thus not subject to disclosure. We disagree.

Owens testified that Appellant confessed to shooting his wife and step-children and then setting the house on fire. In addition, Owens stated that on the day Appellant was arrested, Appellant had kidnapped him at gun point and made him drive around. Owens testified that he was relieved when the police pulled them over because he was afraid Appellant was going to kill him as well. Appellant, however, maintained that he and Owens were simply driving around discussing the fire and his troubled relationship with Shirley, and

that at no time did he tell Owens he committed the crimes.

The defense sought to use Owens' comprehensive care records and school records to impeach his credibility. Contrary to the meek, scared individual he appeared to be at trial, the records indicated that Owens suffered from an aggressive disorder and had physically threatened family members and friends. Moreover, the comprehensive care records contained information that Owens suffered from mild mental retardation and had difficulty understanding many concepts. Owens was hearing impaired as well. Appellant argues that this evidence was crucial in explaining that Owens was mistaken in believing that the conversation in the car was a confession rather than a discussion of the events in question.

*Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1994), *cert. denied*, 516 U.S. 1154, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996), provides that a defendant bears the burden of producing "articulable evidence that raises a reasonable inquiry of a witness' mental health history." This Court has consistently held that a trial court does not abuse its discretion in refusing to permit a witness to be cross-examined about his or her mental history where there is no substantial basis for the inquiry. *Id.; Commonwealth v. Huber*, Ky., 711 S.W.2d 490 (1986).

We need not necessarily decide whether Owens' records were exculpatory evidence because Owens, in fact, signed a waiver releasing all records. The records were released to Pulaski County Sheriff's Department who gave them to the prosecutor. The Commonwealth thereafter transferred the records to the trial court for inspection. However, there is absolutely nothing in the record to indicate that Owens objected to releasing the records to the defense, or that he was claiming any

privacy interest or privilege. We find no reason to deny the defense access to all of the records. On remand, Owens' medical, comprehensive care, and school records shall be made available to the defense. Whether any or all of the records are admissible at retrial will depend on the applicable provisions of the Kentucky Rules of Evidence.

## VI. INSTRUCTIONS

### 1. *Guilt Phase*

■ Appellant argues that the trial court erred in failing to instruct the jury on extreme emotional disturbance. Appellant contends that the Commonwealth introduced sufficient evidence that, if he did commit the crimes, he did so under the influence of EED. This argument is without merit.

During the discussion on jury instructions, defense counsel informed the trial court:

> I think I should state for the record we've not tendered any instructions and we've not asked for any lesser included instructions and I don't believe such would be warranted. Mr. McKinney's defense is that he did not do it and there is not any proof of any other kind of homicide other than the intentional killing of these folks, so for whatever that strategy is worth many years down the road, that it is what we are thinking today.

Unquestionably, it was trial strategy to waive instructions on any lesser offense on the theory that the jury would not believe that Appellant was guilty of intentional murder. Because of defense counsel statements, the trial court had no duty to instruct the jury on first-degree manslaughter. *See* RCr 9.54(2).

### 2. *Penalty Phase*

■ Appellant argues that the trial court also erred in failing to give an instruction during the penalty phase on the statutory mitigating circumstance of extreme emotional disturbance. Appellant concedes that this issue is not preserved, but urges its review as palpable error under RCr 10.26, on the grounds that there was overwhelming evidence presented during the guilt phase that if he did commit the crimes, he did so under the influence of extreme emotional disturbance. *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987).

The Commonwealth's theory of the case was, in fact, that the murders were the result of an emotional argument between Appellant and Shirley McKinney. Numerous witnesses testified about Shirley's high-tempered nature, and that the couple fought incessantly. Notwithstanding, Appellant maintained throughout the guilt phase that he absolutely did not commit the murders. An instruction on EED was neither requested nor wanted during the guilt phase. Accordingly, if it was trial strategy to reject any EED defense during the guilt phase, the trial court certainly could not have been expected to *sua sponte* instruct the jury on the mitigating circumstance of EED during the penalty phase. If Appellant desired to change his strategy during the penalty phase, he had an obligation to inform the trial court. In any case, the trial court did give the catch-all mitigating circumstance instruction which provided that jurors could consider any and all mitigating evidence. There was no error.

■ Appellant next takes issue with the trial court's refusal to instruct the jury that the law does not require a finding of one or more mitigating factors to exist beyond a reasonable doubt in order to

return a sentence less than death. There is no constitutional requirement that the trial court define mitigating circumstances or explain their function. "Jury instructions at the sentence stage of a capital trial need not include any particular words or phrases to define the concept of mitigation or the function of mitigating circumstances." *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 37–38 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1528 (11th Cir.1995), *cert. denied*, 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995)).

 The jury was given a catch-all instruction to consider any and all mitigating factors which it found relevant. There is no requirement to enumerate each nonstatutory factor in detail. *Haight v. Commonwealth*, Ky., 938 S.W.2d 243 (1996), *cert. denied*, 522 U.S. 837, 118 S.Ct. 110, 139 L.Ed.2d 63 (1997); *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990), *cert. denied*, 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991). Moreover, the trial court was correct in refusing to instruct the jury that a preponderance of the evidence is the standard of proof for mitigating circumstances. "Since a jury is not required to make findings with regards to mitigators, but only to consider them, there is no need to define the standard of proof." *Tamme, supra,* at 38. Nor is there a requirement to instruct the jury on "residual doubt" as to mitigating factors. *Bussell v. Commonwealth*, Ky., 882 S.W.2d 111 (1994).

 Finally, Appellant argues that the penalty phase verdict forms were flawed because they required the jury to sentence him to death or life without parole for twenty-five years upon the finding of an aggravating circumstance. This is a claim which has been previously rejected by this Court. *Wilson v. Commonwealth*, Ky.,

836 S.W.2d 872 (1992), *cert. denied*, 507 U.S. 1034, 113 S.Ct. 1857, 123 L.Ed.2d 479 (1993), *overruled, on other grounds, St. Clair v. Roark*, Ky., 10 S.W.3d 482 (1999). The verdict forms, which are identical to those set forth in Cooper, *Kentucky Instructions to Juries Criminal*, § 12.10, at 742–45 (4th ed. Anderson 1999), are clear that the jury is not required to find an aggravating circumstance unless it intends to impose the death penalty or life without parole for twenty-five years. Moreover, the "Authorized Sentences" instruction clarifies the options to the jury and specifically states, "The finding of an aggravating circumstance ... does not require the imposition of the death penalty or life in prison without benefit of parole for twenty-five years."

 Appellant next claims error in the trial court's failure to instruct the jury that no adverse inference could be drawn from his failure to testify. Appellant concedes this issue is not preserved. In *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), the United States Supreme Court held that when a defendant makes a proper request, the trial court must instruct the jury that a defendant is not compelled to testify and the fact that he does not testify cannot be used as an inference of guilt. Moreover, RCr 9.54(3) provides that "the instructions shall not make any reference to a defendant's failure to testify, unless so requested by him ..." As Appellant did not request such an instruction, he cannot now claim error in the trial court's failure to give one. In any event, the issue is rendered moot by the reversal of Appellant's conviction.

## VI. PHOTOGRAPHS OF CRIME SCENE AND VICTIMS

 Appellant argues that a videotape of the crime scene depicting the burned bodies of the victims, as well as numerous

photographs of the scene and the victims were irrelevant and unnecessarily gruesome. We disagree. The videotape and photographs were an accurate depiction of the crime scene. "[T]he general rule is that relevant photographs are not inadmissible just because they are gruesome and the crime they depict is heinous." *Eldred, supra,* at 704; *Clark v. Commonwealth,* Ky., 833 S.W.2d 793 (1991).

## VIII. FAILURE TO GRANT DIRECTED VERDICT

Appellant contends that he was entitled to a directed verdict on the murder charges since the Commonwealth failed to prove the absence of extreme emotional disturbance. Appellant's argument fails on two grounds. First, although defense counsel moved for a directed verdict at the close of the Commonwealth's case, no reference was made to EED. Defense counsel again moved for a directed verdict at the close of trial "on the grounds stated previously." At no time did counsel argue EED or the lack of evidence thereof as grounds for the motion. Thus, this claim was never presented to the trial court.

■ Notwithstanding, we have recently addressed and rejected Appellant's theory in *Spears v. Commonwealth,* Ky., 30 S.W.3d 152 (2000). While the Commonwealth is required to prove every element of murder beyond a reasonable doubt, it need not affirmatively disprove EED unless the evidence of such is so overwhelming that it necessitates acquittal on the murder charge. *Id.* at 154; KRS 500.070; *see also Wellman v. Commonwealth,* Ky., 694 S.W.2d 696, 697 (1985).

## IX. DOUBLE JEOPARDY CLAIMS

■ Appellant claims that the use of the multiple murders as an aggravating circumstance constitutes double jeopardy. We disagree. The trial court instructed the jury during the penalty phase that it could consider as an aggravating circumstance that "the defendant's act or acts of killing were intentional and resulted in multiple deaths." This complies with multiple deaths aggravating circumstance language in KRS 532.025(2)(a)(6).

We addressed this issue in *Bowling v. Commonwealth,* Ky., 873 S.W.2d 175, 181 (1993), *cert. denied,* 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994):

> Bowling's sentence was based on the murder of two different victims. In order to constitute multiple deaths, two are all that is necessary. Here there were two convictions and two sentences. KRS 532.025 does not require that the defendant be punished for the same offense twice. Aggravating circumstances only determine whether the crime of murder shall carry the death penalty.

Similarly, we again stated in *Tamme, supra,* that the "imposition of two death sentences by application of the same aggravating factor, i.e. intentional acts of killing resulting in multiple deaths, did not violate the proscription against double jeopardy." *Id.,* 973 S.W.2d at 40.

■ Appellant also claims that under the indictment and the instructions, the Commonwealth relied on the setting of the fire as the act that destroyed the house, that destroyed the physical evidence that was to be used in an official proceeding, and that burned the victims' bodies. Thus, Appellant contends that since the jury had to believe he set the house on fire to find him guilty of arson, tampering with physical evidence, and abuse of a corpse, he was punished three times for the same offense in violation of KRS 505.020, Ky. Const. § 13, and the Fourth and Fifth Amendments to the United States Constitution.

Second-degree arson, KRS 513.030, requires a showing that the person started a

fire intending to destroy or damage a building of another. Abuse of a corpse, KRS 525.120, requires that a person intentionally treat a corpse in a way that would outrage ordinary family sensibilities. Finally, tampering with physical evidence, KRS 524.100, requires a person to destroy, mutilate or alter physical evidence believed to be used in an official proceeding with the intent to impair its verity or availability in the official proceeding. It is clear that each charge requires proof of at least one fact which the other two do not. *Commonwealth v. Burge*, Ky., 947 S.W.2d 805 (1996), *cert. denied*, 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 323 (1997).

## X. SHIRLEY PARSONS' DEPOSITION

Appellant claims that the taking of Parsons' deposition in his absence and its subsequent use at trial was a violation of his constitutional rights, as well as a violation of RCr 7.12 and RCr 8.28. Appellant argues that although he did not specifically object to his absence at Parsons' deposition, he did not personally waive, on the record, his right to be present, as is required by *Dean v. Commonwealth*, Ky., 777 S.W.2d 900, 903 (1989).

At the time of Appellant's trial, RCr 7.12(3), Taking depositions, provided that "If a defendant is in custody, he shall be produced at the examination by the officer having him in custody and kept in the presence of the witness during the examination." In *Dean, supra*, this Court reversed a conviction for a similar error, noting that the failure to require the defendant's presence at a deposition violated not only RCr 7.12, but also his constitutional right to be present and confront witnesses guaranteed by § 11 of the Kentucky Constitution. We noted that an attorney's waiver of a client's right to be present was insufficient, as the defendant must personally waive his or her right on the record.

However, we do not believe that the error in this case was prejudicial to Appellant. Unlike the circumstances in *Dean, supra*, where the witness in question was testifying against the defendant's interests, Parsons was deposed on behalf of the defense. The purpose of Parsons' deposition was to prove that Appellant and Daniel Owens had been in Parsons' store playing pool on the day Appellant was arrested, thus impeaching Owens' testimony that Appellant had kidnapped him at gunpoint and that he feared for his life. Parsons stated that the two played several games of pool and that nothing appeared out of the ordinary.

We have carefully reviewed Parsons' deposition and, contrary to Appellant's assertions, find absolutely nothing in Parsons' testimony that could be interpreted as bolstering Owens' statements. The excerpts of Parsons' comments contained in Appellant's brief are taken out of context, and when evaluated in their entirety, in no manner prejudice Appellant. Thus, while we conclude that the failure to secure Appellant's presence at Parsons' deposition was error, such was harmless. RCr 9.24 The totality of the circumstances does not persuade this Court that Appellant may not have been found guilty of a capital offense or the death penalty may not have been imposed but for the unpreserved error. *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367 (1989), *cert. denied*, 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990), *overruled, on other grounds*, *St. Clair v. Roark*, Ky., 10 S.W.3d 482 (1999).

## XI. ABUSE OF CORPSE CHARGES

Appellant argues that he was prejudiced by the trial court's refusal to sever the abuse of corpse charges from the remaining charges. He contends that the

joinder of those charges with the murder charges allowed the Commonwealth to introduce what he considers to be unduly grotesque photographs of the crime scene and of the victims' bodies.

 First, there is no indication that a written motion was ever filed by the defense regarding the abuse of corpse charges. Appellant contends that during the trial, he made reference to the fact that the trial court had denied an oral motion to sever the charges, and claims that since the court did not disagree or comment that such was essentially an "adoptive admission" that the ruling did occur. We disagree. It is the responsibility of the party making a motion to ensure that said motion is properly in the record.

██ In any event, Appellant is incorrect in arguing that the joinder of the abuse of corpse charges was the only grounds for admitting the crime scene photographs. As we previously stated, the photographs were accurate depictions of the location and condition of the bodies. Such evidence was relevant and was not rendered unduly prejudicial simply because it was graphic. Moreover, we are of the opinion that severance of the charges was not warranted under RCr 9.16. No error occurred.

## XII. CHAIN OF CUSTODY

Appellant contends that the Commonwealth failed to establish the chain of custody with regard to leaves and twigs containing trace amounts of accelerant that were gathered at the crime scene. We disagree.

██ Sheriff Catron, who discovered the debris near one of the victims, testified that he placed the evidence into a bag and gave the bag to Officer Brett Whitaker. Officer Whitaker, in turn, testified that he received the bag from Sheriff Catron and that the bag produced at trial was indeed the same one. Officer Whitaker stated that he sent the bag to the Kentucky State Police Lab in Frankfort for testing. Next, Kenneth Rider, a forensic specialist at the lab, testified that he received the bag, examined the material contained therein, and found trace amounts of fuel oil. Rider also stated at trial that the bag introduced by the Commonwealth was the same bag he received and tested.

Appellant argues that the Commonwealth failed to lay the proper foundation because Officer Whitaker was not physically present when Sheriff Catron collected the evidence, and further that Officer Whitaker did not specify exactly when he sent the evidence to the lab and where he kept it beforehand. However, in *Rabovsky v. Commonwealth*, Ky., 973 S.W.2d 6, 8 (1998) we stated:

> Even with respect to substances which are not clearly identifiable or distinguishable, it is unnecessary to establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that "the reasonable probability is that the evidence has not been altered in any material respect." *United States v. Cardenas*, 864 F.2d 1528, 1532 (10th Cir.1989), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989).... Gaps in the chain normally go to the weight of the evidence rather than to its admissibility. (Citations omitted.)

There is simply no reason in this case to believe that the evidence in question was either misidentified or altered in any manner. The Commonwealth established a sufficient chain of custody for its admission.

## XIII. DEATH PENALTY ISSUES

Appellant raises the multiple issues that are routinely raised in every death penalty appeal, *e.g.*, death qualification of jurors is

unconstitutional, residual doubt bars the imposition of death, there is insufficient statutory guidance for the imposition of the death penalty, etc. We have consistently held these arguments to be without merit and find no reason to reiterate our reasoning at this time. *See Tamme, supra; McQueen v. Parker,* Ky., 950 S.W.2d 226 (1997); *Bowling v. Commonwealth,* Ky., 942 S.W.2d 293 (1997), *cert. denied,* 522 U.S. 986, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997).

Accordingly, the judgment and sentences of the Pulaski Circuit Court are reversed, and this case is remanded for a new trial in accordance with this opinion.

LAMBERT, C.J., COOPER, GRAVES, KELLER, and STUMBO, J.J. concur.

JOHNSTONE, J., dissents in a separate opinion in which WINTERSHEIMER, J., joins.

JOHNSTONE, Justice, Dissenting.

Respectfully, I dissent from the majority's holding that this case should be reversed for the trial court's exclusion of expert testimony to explain Appellant's lack of emotional response to the fire and death of his family. The trial judge ruled that evidence of the Appellant's demeanor soon after the death of his wife and stepchildren was relevant to his intent and knowledge about the offense. However, in ruling that Appellant could not offer expert testimony to explain his lack of expression, the trial judge stated:

No witness, lay or expert, may given (sic) an opinion on how the Defendant felt after the death of his family and destruction of his house. Witnesses may describe their observations of the Defendant, however the extent to which they may do so is a matter to be resolved when the evidence is presented and the Court is able to assess that evidence and any objections thereto. A jury of adult citizens is fully capable of

fairly considering the admissible evidence and, in conjunction with the other proof in the case, assigning appropriate weight to such testimony to determine what, if anything, the Defendant's demeanor indicates about his guilt or innocence. It was widely noted, that at the time of the assassination of President Kennedy, Jacqueline Kennedy revealed publicly no outward sign of emotion. Similarly, it is well known that Susan Smith, the South Carolina mother convicted of murdering her infant children, gave a dramatic emotional response to the reported loss of her children. It is within the realm of human experience to assess the significance of such expression or lack of expression, and juries are capable of making that assessment without the opinion of psychological experts.

In my opinion, the statements complained of were neither lay opinion testimony nor ultimate issue evidence. Rather, the testimony concerning the Appellant's emotional reaction on the day in question consisted of observations of witnesses. However, assuming for the sake of argument that such testimony could be lay opinion evidence, it is clear that the decision to allow, or disallow, opinion testimony lies within the sound discretion of the trial courts. A review of the above-quoted ruling reveals that the trial judge carefully considered the proffered expert testimony and thoughtfully explained his rationale. I believe he admirably discharged his responsibility to exercise his discretion with great care. Accordingly, I would affirm the judgment of the Pulaski Circuit Court.

WINTERSHEIMER, J., joins this dissenting opinion.