Ernest Arnaze ROGERS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 95–SC–844–MR, 96–SC–232–MR.

Supreme Court of Kentucky.

March 25, 1999.

As Modified June 17, 1999.

**184**

Marie Allison, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Karen Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler, III,‘ Attorney General, Frankfort, Kent T. Young, Assistant Attorney General, Office of the Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

STEPHENS, Justice.

Appellant Ernest Rogers was tried and found guilty of murder, first degree robbery, criminal attempt to commit murder, kidnapping and first degree attempted rape. Rogers was sentenced to a term of eighty years of incarceration. The jury was unable to reach a unanimous agreement on what sentence Rogers should be awarded for his murder conviction. Since the murder was committed during the commission of a first–degree robbery, Rogers was eligible for the death penalty. Subsequently, Rogers was sentenced to the death penalty. Rogers appeals his convictions for various reasons which shall be discussed in the body of this opinion.

On the night of July 11, 1994, two men abducted and robbed Steve Marquess and Tracey Geordan while they were working in the Brickyard Plaza parking lot in Hopkinsville, Kentucky. Marquess was able to escape from his captors. However, Geordan was not so fortunate. She was found dead and the victim of an attempted rape. Ernest Rogers and Nakia Dillard were arrested and charged with these crimes. Dillard made a statement to the police that was recorded on videotape. In this statement, Dillard admits that he abducted, robbed and shot without result at Marquess. However, Dillard placed all blame on Rogers for the attempted rape and murder.

Although Rogers raises numerous issues in this matter of right appeal, in view of our disposition of this case we find it necessary only to deal with the two following matters. One, was the statement given by Rogers’ co-defendant Nakia Dillard properly admitted into evidence at trial? Two, should the trial court have permitted the defendants to show their fingernails to the jury? We shall now discuss both these issues in greater detail.

**I. Admissibility of Confession of Co–Defendant at Trial.**

■ During the course of the trial of Rogers and Dillard, Dillard’s videotaped statement was played in its entirety for the jury. The only redaction to the videotape was that whenever Dillard referred to Rogers, the audio was deleted at that part. This redaction was the sole attempt to comply with the requirements of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367 (1989). We find this attempt insufficient. The dictates of these cases require that any statement which is to be shown to the jury must be so purged of the mention of a co-defendant as to remove any prejudicial effect. That was not achieved in this case. It was obvious that the silence referred to Rogers. No other conclusion is possible.

Section Eleven of the Kentucky Constitution, as well as the Sixth Amendment to the United States Constitution, guarantees a defendant the right to meet and challenge the witnesses who come to offer evidence at trial. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that in a joint trial the admission of a non-testifying co-defendant's confession which "expressly implicated" his fellow co-defendant, was a violation of the Confrontation Clause of the Sixth Amendment, as extended to the several States by the Fourteenth Amendment. *Id.* at 124, n. 1, 88 S.Ct., at 1621 n. 1. *Bruton* was based on the proposition that while it is legitimate in many cases to give a limiting instruction to a jury, in this case a limiting instruction is not "an adequate substitute for [a co-defendant's] constitutional right of cross-examination." *Id.* at 136, 88 S.Ct. at 1628. The right of confrontation includes the right to cross-examine witnesses. *Pointer v. Texas*, 380 U.S. 400, 404, 406–07, 85 S.Ct. 1065, 1068, 1069–70, 13 L.Ed.2d 923 (1965).

In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the United States Supreme Court again had occasion to revisit the issue of the admissibility of a non-testifying co-defendant's statement. In *Richardson*, the issue was whether a confession of the first defendant, which in its redacted form omitted all references to the second defendant, was admissible against the second defendant. The *Richardson* Court held that under such conditions, a confession would be admissible against the second defendant. The reason the confession was admissible in *Richardson*, but not in *Bruton* was that in the latter case the confession clearly implicated the co-defendant, while in the former case, the confession made no mention of the co-defendant or for that matter that anyone other than the confessor and a third person had been involved in the wrongdoing. *Richardson*, 481 U.S. at 203, 107 S.Ct. at 1705. In *Richardson*, the confession only became incriminating when it was "linked with other evidence introduced later at trial." *Id.* at 208, 107 S.Ct. at 1707.

This Court has also dealt with the issue of the admissibility of a co-defendant's confession in a joint trial. In *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367 (1989), basing our decision on *Bruton* and *Richardson*, we found that a co-defendant's confession had been improperly admitted into evidence. Cosby and his co-defendant, Walls, were jointly tried for robbery, kidnapping and murder. The statement of Cosby's non-testifying co-defendant was played before the jury, which, just as in the instant case, placed the blame for the most serious crime upon Cosby. The *Cosby* court held that since Walls' statement was improperly introduced to the jury, Cosby's conviction was reversed and remanded for new trial.

In a case remarkably similar to the instant case, the United States Supreme Court held that simply replacing a co-defendant's name with the words "deleted" or "deletion", does not comply with the dictates of *Bruton* and *Richardson*. In *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), a confession was read into evidence with some other word being substituted for the co-defendant's name. That court held:

> Unless the prosecutor wishes to hold separate trials or to use separate juries or to abandon the use of the confession, he must redact the confession to reduce significantly or to eliminate the special prejudice that the *Bruton* Court found. *Redactions that simply replace a name with an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble Bruton's unredacted statements that, in our view, the law must require the same result.* (emphasis added).

*Id.*, 118 S.Ct. at 1155, 523 U.S. 185.

The *Gray* Court had three primary reasons for reaching the result it did. First,

"a jury will often react similarly to an unredacted confession and a confession redacted this way, for the jury will often realize that the confession refers specifically to the defendant." *Id.* Second, "the obvious deletion may well call the jurors' attention specifically to the removed name. By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation—once the jurors work out the reference." *Id.* at 1155–56, 523 U.S. 185. "Finally, Bruton's protected statements and statements redacted to leave a blank or some similarly obvious alteration, function the same way grammatically. They are directly accusatory. . . The blank space in an obviously redacted confession also points directly to the defendant." *Id.* at 1156, 523 U.S. 185. For these reasons the *Gray* Court found that confessions which are redacted as was the instant confession are no different than the admission of an unredacted confession and thus "warrant the same legal results." *Id.*

In discussing why confessions redacted in the manner of the instant confession fall outside of the ambit of *Richardson*, the *Gray* Court pointed out that "Richardson's inferences involved statements that did not refer directly to the defendant himself and became incriminating only when linked with evidence introduced later at trial." *Id.* at 1157, 523 U.S. 185 (*citing Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707) (internal quotes omitted). While in *Gray* and in the instant case, the redacted confession with an obvious blank prominent on its face, in the words of the *Richardson* Court, "facially incriminat[es] the codefendant." *Id.* (*citing Richardson*, 481 U.S. at 209, 107 S.Ct. at 1708). Accordingly, we hold that the merely deleting the defendant's name is not sufficient to comport with the dictates of *Bruton, Richardson, Cosby* and *Gray* and in so doing violates Section 11 of the Kentucky Constitution as well as the Sixth Amendment to the United States Constitution.

When the Commonwealth wishes to employ the statement of a non-testifying co-defendant, it has two choices. It can either engage in separate trials for each defendant or it can redact the statement, if it is possible, so that "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1705, 95 L.Ed.2d 176 (1987).

## II. Viewing of Co-defendants Fingernails by Jury.

The second issue which we shall address is the viewing of Dillard's fingernails (or more appropriately, the lack thereof) by the jury. Counsel for Dillard made a motion that both Dillard and Rogers exhibit their hands to the jury. The apparent reason for this had little to do with the defendants' hands and much more to do with their fingernails. According to the testimony of Dr. George Nichols, who performed the autopsy on Geordan, her body had abrasions consistent with having been made by fingernails.

No other evidence was offered by the prosecution at trial regarding either the marks on Geordan's body or the fingernails of either defendant. No attempt to recover skin from Geordan which might have lodged under the fingernails of either defendant was made. In short, no evidence from the time of the crime exists to connect either defendant in any way to the fingernail marks on Geordan's body.

Counsel for Dillard presumably sought to demonstrate to the jury that because Dillard's fingernails were chewed down to the quick he could not have been the attempted rapist and presumably not the murderer of Geordan. How the length of the defendants' fingernails one year after the offense could be probative of the length of the fingernails on the night of the offense is beyond the understanding of this Court. For several reasons which we shall outline below we find that this demonstration was improper and should not have

been admitted into evidence by the trial court.

■ As a threshold issue we must address the preservation of the objection to the admission of this evidence. Counsel for Rogers apparently withdrew their original objection to the presentation of the defendants' fingernails to the jury. Normally such an error would only become reviewable under the palpable error standard due to this waiver. However, unpreserved errors are reviewable in a case where the death penalty has been imposed. KRS 532.075(2); *Baze v. Commonwealth*, Ky., 965 S.W.2d 817 (1997). *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, 674 (1984). The rationale for this rule is fairly straightforward. Death is unlike all other sanctions the Commonwealth is permitted to visit upon wrongdoers. *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367 (1989) (*citing Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)). Accordingly, the invocation of the death penalty requires greater caution than is normally necessary in the criminal justice process.

First, the present state of a defendant's fingernails is not relevant to a proceeding regarding events which occurred a full year earlier. Second, even assuming arguendo that it was relevant, this evidence offered alone can only mislead and confuse the jury. Third, given the nature of a person's fingernails, subject to constant alteration, such evidence lacks the necessary integrity to be employed in the judicial process. We shall now address each of these areas in greater detail.

■ "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. In this case Dillard seeks to offer evidence of the state of his fingernails one year after the offense as being relevant to the crimes with which he is charged. We cannot find any fact of consequence that is made more or less probable based on this evidence.

■ "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. Assuming arguendo, that the state of the defendants' fingernails does have some remote relevance to this case, the danger of confusing the issues and/or misleading the jury is so great in this case as to outweigh whatever value this evidence has to offer.

■ Under KRE 901(a), evidence must be adequately authenticated or identified. Part of the identification of evidence is a demonstration of its integrity, that it is in fact what its proponent claims it to be. "A change that is material to the probativeness of the evidence is fatal." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 11.00 (3rd ed.1993). In this case, Dillard cannot possibly establish the necessary chain of custody to prove that the state of his fingernails, one year after the crimes, was the same as that on the night of the crimes. No information of any sort exists as to the state of Dillard's or Rogers' fingernails on the night of July 11, 1994. If it did, then there would have been no reason to show the jury Dillard's fingernails at trial since evidence of what they were at the time the crimes committed would exist. So basically, under any scenario, neither of the defendant's fingernails could be satisfactorily "authenticated" under KRE 901 and thus neither should have been shown to the jury.

■ Given that there was very little evidence of any type connecting either defendant to Geordan's body, any evidence which was submitted to the jury along those lines would necessarily carry great weight. In this case, the jury was shown two defendants, one of whom functionally had no fingernails and one who did. The

jury had already been informed that Geordan's body had abrasions on it consistent with fingernail marks. In such a case as this it was grossly improper to grant the motion to show the jury the defendants' fingernails. For the reasons we have stated above, such evidence did nothing to assist the trier of fact and certainly could only mislead the jury. While the general rule is that all relevant evidence is admissible, KRE 402, the evidence still must be relevant. We think that in a case with so little physical evidence pointing towards either defendant, the trial court should have at least required some showing and explanation of why the viewing of the defendants' fingernails should have been admissible. We conclude that admission of the evidence was improper and prejudicial. On a retrial of this case it shall not be admitted.

### Conclusion

The errors in the trial are such that given their nature and the quality of the penalty meted out to this defendant, the convictions of Rogers are reversed and the matter is remanded for retrial in conformance with this opinion.

LAMBERT, C.J., and COOPER, JOHNSTONE and STUMBO, JJ., concur.

GRAVES, J., dissents in a separate dissenting opinion.

WINTERSHEIMER, J., joins in this dissenting opinion.

GRAVES, Justice, dissenting.

Respectfully, I dissent in all respects. However, I particularly take issue with so much of the majority opinion as holds it was reversible error to have permitted the defendants, Ernest Arnaze Rogers and Nakia Dillard, to show their fingernails to the jury.

It was counsel for the co-defendant Nakia Dillard who made the motion to have the hands of both defendants exhibited to the jury. The court noted that there would be no appreciable change in the size of the defendants' fingers. Counsel for the defendant Ernest Arnaze Rogers waived objection to showing the jury the defendants' hands to demonstrate the respective sizes of the defendants' hands. Defendant Rogers' counsel argued to the jury that condition of the defendants' nails at trial would have no bearing on the condition of their fingernails at the time of the crime. The trial court advised the jury that the question of whether Nakia Dillard, Ernest Arnaze Rogers' co-defendant, bites his nails could only be answered if Nakia Dillard took the stand and testified at trial. Dillard did not testify.

Dr. George R. Nichols, III testified two marks on the upper surface of the victim's right buttock were consistent with fingertips working by a grabbing action of the human hand. A photograph of those injuries was introduced into evidence. Dr. Nichols also testified concerning parallel contusions on the inner surfaces of each thigh which are consistent with a forceful prying apart of the thighs of a woman as she resists movement by the fingers.

Without a more complete record, we are left to surmise whether it was trial strategy for counsel for Dillard to rule out some characteristics of the fingers.

"Weighing the relevancy against the prejudice is peculiarly within the province of the trial court." *Foley v. Commonwealth*, Ky., 942 S.W.2d 876, 888 (1996). No reversible error occurred in permitting the jury to view the defendants' hands.

WINTERSHEIMER, J., joins this dissenting opinion.