Donald Herb JOHNSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 1997–SC–0842–MR,
2001–SC–0803–MR.

Supreme Court of Kentucky.

Feb. 20, 2003.

Rehearing Denied May 22, 2003.

Julie Namkin, John Palombi, Assistant Public Advocates, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General of Kentucky, David A. Smith, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

On November 29, 1989, sixty-one year old Helen Madden was beaten, stabbed, mutilated, and tortured to death in the supply storage room of the Laundromat where she worked. Her body was so disfigured that a co-worker of thirteen years was unable to identify her. Appellant, Donald Herb Johnson, was subsequently arrested for the crimes. Pursuant to RCr 8.08, he entered unconditional guilty pleas in Floyd Circuit Court to murder, first degree robbery, first degree burglary, and two counts of first degree sexual abuse.

The prosecution moved for jury sentencing. Appellant opposed the motion, and the trial court ruled in his favor. The prosecution sought interlocutory relief from the trial court's order allowing Appellant to waive jury-recommended sentencing unilaterally. This Court ruled that a prosecutor can insist on jury-recommended sentencing over a defendant's objection.[1] After prevailing in this Court, however, the prosecution consented to Appellant's request to be sentenced solely by the trial court without intervention of a jury. After hearing evidence on the issue of punishment, the trial court sentenced Appellant to death, twenty years, fifteen years, and five years for his crimes. Appellant now appeals as a matter of right from the final judgment.[2]

Appellant has presented twenty-six separate claims of error, but among them there is considerable overlap. Four separate claims are presented as to the alleged lack of a factual basis to support the guilty pleas even though Appellant's crimes all arose from a single set of operative facts. Various issues are raised with respect to the validity of Appellant's guilty pleas, and his waiver of jury sentencing is attacked repeatedly, despite the fact that he insisted he had a right to waive jury sentencing even before this Court. Finally, Appellant makes certain "boiler plate" arguments settled by this Court in prior decisions. In this opinion, therefore, we will fully address the significant issues presented and deal with the others in a more summary fashion.

Appellant first claims that the trial court erred by accepting his guilty pleas on all charges. In support of this claim, he contends that the guilty pleas were not entered knowingly, voluntarily, and intelli-

---

1. *Commonwealth v. Johnson,* Ky., 910 S.W.2d 229 (1995).

2. Ky. Const. § 110(2)(b).

gently because the trial court did not specifically inform him of certain matters, discussed in greater detail below. This claim of error was not preserved for appellate review yet will be addressed pursuant to KRS 532.075(2).[3] The standard of review for unpreserved errors in a case in which the death penalty has been imposed is properly stated as follows:

> Where the death penalty has been imposed, we nonetheless review allegations of these quasi errors. Assuming that the so-called error occurred, we begin by inquiring: (1) whether there is a reasonable justification or explanation for defense counsel's failure to object, e.g., whether the failure might have been a legitimate trial tactic; and (2) if there is no reasonable explanation, whether the unpreserved error was prejudicial, i.e., whether the circumstances in totality are persuasive that, minus the error, the defendant may not have been found guilty of a capital crime, or the death penalty may not have been imposed.[4]

There are four matters that Appellant alleges the trial court should have informed him of for the guilty pleas to be valid: first, that he had a right to be free from compulsory self-incrimination and that he would be waiving that right by pleading guilty;[5] second, that he had a right to appeal and that he would be waiving that right by pleading guilty;[6] third, that he had a right to a jury determination of both guilt and degree of punishment and that by pleading guilty he would be waiving this right; and fourth, that he had a right to the presumption of innocence and that he would be waiving that right by entering a guilty plea.

■ Appellant is correct in the identification of his rights, but in the instance of a guilty plea, *Boykin v. Alabama*[7] does not require a separate enumeration of rights waived and separate waivers as to each.[8] Rather, *Boykin* requires that the defendant have a "full understanding of what the plea connotes and its consequences."[9] In this case, prior to accepting the guilty pleas, the trial court asked Appellant twenty questions pertaining to his understanding of his legal circumstances and consequences. These questions and Appellant's responses leave no doubt that he was aware of the rights he was waiving. Thus, there was no error.

■ Appellant next argues that the trial court's acceptance of the guilty pleas was in error because a written waiver of Appellant's right to a jury trial was not procured, as required by RCr 9.26. This claim of error is not preserved yet will be reviewed under the standard set forth hereinabove, *supra*, p. 691.

Several days before Appellant entered his guilty pleas, he filed a lengthy memorandum discussing the right to trial by jury on guilt and degree of punishment, and his desire to waive that right. Appel-

---

**3.** *See Rogers v. Commonwealth*, Ky., 992 S.W.2d 183, 184 (1999) ("unpreserved errors are reviewable in a case where the death penalty has been imposed").

**4.** *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 668 (1991).

**5.** U.S. Const. Amendments V, XIV; Ky. Const. §§ 2, 11; *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

**6.** Ky. Const. § 115; KRS 532.075.

**7.** 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

**8.** *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir.1975).

**9.** *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir.1975); *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir.1988).

lant vigorously continued to pursue sentencing by the trial court instead of a jury throughout appellate litigation, as evidenced by *Commonwealth v. Johnson,* discussed above. Thus, although there is no official written plea form signed by Appellant in the record, it is clear that his unswerving trial strategy involved adamant avoidance of a jury trial and a jury sentencing recommendation. Given the excessively gruesome nature of the murder, which entailed torture and mutilation of an elderly victim, this strategy was not unreasonable. The abhorrent details of this murder would not have invited sympathy from a jury. Thus Appellant's current claims of error with regard to the lack of a jury trial, after he assiduously evaded a jury trial, do not warrant reversal. Although there appears to be no reasonable explanation for defense counsel's failure to obtain a formal written waiver, this unpreserved error was not prejudicial.

■ Appellant's next significant claim is that the trial court erred by failing to hold a hearing to determine his competency to plead guilty. This claim of error is not preserved, yet will be reviewed under the standard set forth in *Sanders.*

The facts giving rise to this claim are as follows. In March 1991, defense neuropsychologist Dr. Engum performed a two day psychological and neuropsychological examination of Appellant. In October 1992, Dr. Deland of the Kentucky Correctional and Psychiatric Center ("KCPC") first concluded that Appellant was competent. On May 13, 1994, the trial court ordered that Appellant again be examined at KCPC. On June 10, 1994, the trial court ordered Appellant transported to KCPC for "medical treatment, including treatment for any mental conditions." On June 13, 1994, the prosecution filed a motion requesting that Appellant undergo a competency evaluation at KCPC pursuant to KRS 504.080 and KRS 504.100. As grounds for the evaluation, the prosecution referred to a psychological report, issued by DPA psychologist Dr. Robert Berland in early April 1994, that did not make a specific determination that Appellant was either competent or incompetent. Thereafter, Dr. Deland of KCPC examined Appellant and filed a report finding him competent on June 14, 1994.

Appellant pled guilty three days later, on June 17, 1994. At the hearing in which the trial court accepted Appellant's guilty plea, defense counsel conceded the issue of competency. In accepting the guilty plea, the trial court relied on defense counsel's stated belief that Appellant was competent as well as a review of the psychological reports indicating that Appellant was competent. However, despite this colloquy and review of information regarding Appellant's competency, it appears that no formal competency hearing was held.

The statutory requirements for competency determinations are governed by KRS 504.100. Specifically, KRS 504.100(1) requires a court to appoint a psychologist or psychiatrist "to examine, treat and report on the defendant's mental condition" whenever "the court has reasonable grounds to believe that the defendant is incompetent to stand trial." The trial court's actions observed the statutory mandate. KRS 504.100(3) states that after the report is filed, "the court shall hold a hearing to determine whether the defendant is competent to stand trial." The statutory language "shall hold" indicates that section 3 is mandatory and cannot be waived by the defendant.[10] Thus, despite the trial court's consideration of Appellant's competency and defense counsel's concession thereof at the plea hearing, it

---

**10.** *Mills v. Commonwealth,* Ky., 996 S.W.2d 473, 486 (1999).

was error to fail to hold a formal competency hearing as required by KRS 504.100(3). By Opinion and Order rendered June 14, 2001, we so held and remanded this cause to the trial court to determine 1) whether a retrospective competency hearing was permissible, and if so, 2) to conduct such a competency hearing.

On July 2, 2001, the trial court held a hearing to determine whether a retrospective competency hearing would be permissible and found that it would be possible to conduct a proper hearing. On August 29–30, 2001, the trial court conducted the hearing and concluded that Appellant had been competent to enter his guilty plea in June of 1994. Appellant now appeals from the trial court's rulings, presenting four separate claims of error.

■■■■ Appellant first contends that his due process rights were violated because the trial court's finding of the permissibility of a retrospective hearing was not supported by sufficiently reliable evidence. We disagree. In the recent case of *Thompson v. Commonwealth,*[11] this Court considered the prior rule requiring reversal of a case for failure to hold a competency hearing[12] and concluded that retrospective competency hearings were now a permissible remedy for such error. A retrospective competency hearing satisfies "the requirements of due process provided it is based upon evidence related to observations made or knowledge possessed at the time of trial."[13] The "quantity and quality of available evidence [should be] adequate to arrive at an assessment that could be labeled as more than mere specu-

lation." Some factors bearing upon the permissibility of a retrospective competency hearing are: 1) the length of time between the retrospective hearing and the trial, 2) the availability of transcript or video record of the relevant proceedings, 3) the existence of mental examinations conducted close in time to the trial date, and 4) the availability of the recollections of non-experts—including counsel and the trial judge—who had the ability to observe and interact with the defendant during trial.[14] No single factor is determinative, and the issue should be decided on a case-by-case basis.[15]

The trial court considered these factors, noting as significant the availability of the trial court's personal observations of Appellant prior to and during the entry of the plea, including Appellant's interaction with trial counsel; the availability of psychological reports and trial counsel's opinion as to competency; and the availability of a transcript of the relevant proceedings. The trial court also considered it significant that there were mental examinations performed close in time to the entry of the plea. As to the time lapse between the plea entry and the competency hearing, the trial court referred to this Court's Opinion and Order stating that seven years between the trial and the retrospective hearing was not enough in and of itself to deny Appellant due process. Thus, there was sufficient evidence to sustain the trial court's view that a retrospective hearing was adequate, and there was no error.

■■■■ Appellant further contends that the psychological examinations and evaluations

---

11. Ky., 56 S.W.3d 406, 408–410 (2001).

12. The prior rule requiring reversal was announced in *Hayden v. Commonwealth,* Ky., 563 S.W.2d 720 (1978).

13. *Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995).

14. *See United States v. Makris,* 535 F.2d 899, 904–905 (5th Cir.1976).

15. *Miller v. Dugger,* 838 F.2d 1530, 1544 (11th Cir.1988).

were insufficient to make a reliable determination of his competency. Again, we disagree. KCPC psychiatrist Frank Deland testified at the August 29–30, 2001 hearing to his knowledge at the time just prior ·to entry of the guilty plea. Dr. Deland stated that based upon his discussions with Appellant's trial attorneys, he had been aware that Appellant was going to enter an open-ended plea.· Dr. Deland testified that the report issued three days before the plea was based upon an evaluation conducted specifically to update Appellant's competency status in light of the impending plea. Given the significance of the plea, according to Dr. Deland's testimony, he had wanted to be very thorough regarding Appellant's understanding of the court process. Dr. Deland testified that he had concluded that Appellant had "much more than a rote understanding of what was going on," and in fact had "a very deep understanding of these issues."

Dr. Deland further testified that he had received no indication from Appellant's two trial attorneys that they were concerned about Appellant's competency. DPA psychologist Dr. Berland admitted on both direct and cross-examination that he had not been able to conclude that Appellant was incompetent when he spoke to him prior to the guilty plea. Accordingly, there was sufficient evidence for a retrospective finding of competency.

Appellant's second claim of error with respect to the 2001 competency hearing was that the trial court improperly placed the burden of proving incompetency on Appellant. Appellant provides no legitimate support for this claim, and thus it must fail.

■ Appellant's third allegation regarding the hearing was that the trial judge erred by not disqualifying himself. In support of this contention, Appellant argues that the trial judge's reliance on his own observations allowed him to act as an unsworn witness whose recollections were not subject to the truth-finding mechanism of cross-examination. Appellant's claim must fail, however, as competency determinations are made by presiding trial judges based in part on their observations, and this does not thereby convert them into witnesses.

■ Appellant's last claimed error, which is not preserved, with respect to the hearing involves allegedly improper hearsay statements. The first statement at issue came after the Commonwealth asked Dr. Deland if Appellant's trial attorneys "ever express[ed] any concerns, any doubts in their minds, as to Mr. Johnson's competency?" Dr. Deland stated that he could "not think of one point where they— where they opined that he was incompetent because of mental illness or retardation, no." Dr. Deland later stated that he had never gotten "an indication from them that they had—they had concerns about his abilities to understand things in a substantial way." As these are not hearsay statements, Appellant's claim must fail.

■ There is more than an implication in Appellant's several briefs to this Court that his guilty plea in and of itself was a sign of his inability to make rational decisions in assisting in his defense—that it was a mark of incompetency to plead guilty and be sentenced by the trial court rather than a jury. When there is strong evidence of a charged crime, however, such as the heinous and gruesome murder of Helen Madden, and when there are photographs and other physical evidence showing the perverse brutality of the crime, and when the defendant's motives do not readily incite sympathy (he tortured and killed a sixty-one-year-old laundromat worker, because she told him the shop was closed and he could not use the telephone,

and this reminded him of his mother), it is entirely rational to plead guilty to a judge in the hope of a receiving a more lenient sentence than from a jury. Indeed, it is not an uncommon trial strategy to avoid facing a jury in such circumstances. Appellant followed this strategy, as demonstrated by his vigorous pursuit of judge-only sentencing despite the prosecution's desire for jury sentencing. This strategy, as with most strategies, entailed a calculated risk. Thus, Appellant's guilty plea should not be misinterpreted as a symptom of incompetence, but as a reasonable trial strategy that failed to achieve its desired end.

■ Appellant's next claim is that the trial court erred by refusing to allow the forensic pathologist who had performed the autopsy on the victim, Dr. John Hunsaker, to testify as to whether he was familiar with the phrase, "pattern of overkill." This claim of error arose as follows. During the penalty phase, Dr. Hunsaker testified to the nature of the victim's injuries. Defense counsel asked Dr. Hunsaker on cross-examination if he was familiar with the phrase "pattern of overkill." The prosecution objected on grounds that the topic was outside Dr. Hunsaker's field of expertise, i.e., that he was qualified as a forensic pathologist and not as a psychologist or psychiatrist. The defense attempted to lay a foundation that would allow Dr. Hunsaker to testify regarding the issue. Dr. Hunsaker acknowledged familiarity with the concept of overkill as a pattern of physical injury, yet stated that the concept came from a field other than his own, psychology or psychiatry, and thus that he could not offer an opinion on the perpetrator's underlying motivations. The trial court thus sustained the objection. Appel-

lant failed to make an avowal, and the testimony sought is not obvious.[16] This claim of error is not preserved yet will be reviewed under the standard set forth hereinabove, *supra*, p. 691.

Appellant contends that he was denied his right to present relevant evidence for his defense when Dr. Hunsaker was prevented from testifying that he could label the pattern of wounds as "overkill." Appellant argues that such testimony would have supported the defense theory that based upon his psychological profile, his actions on the night of the murder were "uncontrollable." The trial court's ruling on the matter, however, was correct. Dr. Hunsaker, by his own acknowledgment, was not properly qualified to testify on "overkill." He is a forensic pathologist without special qualifications in psychological profiling. As such, there was no error.

Appellant next contends that the trial court erred by refusing to let him withdraw his guilty plea. He contends that the plea should have been withdrawn because defense counsel offered him erroneous advice upon which he relied in pleading guilty, i.e., that he could waive his right to jury sentencing. This issue, however, is moot and therefore need not be addressed for the following reasons. Although this Court held in *Commonwealth v. Johnson* [17] that a capital defendant does not have the right to waive jury sentencing by making an unconditional plea of guilty, the prosecution in this case ultimately consented to Appellant's request to be sentenced by the trial court without a jury's recommendation. As Appellant eventually received the judge-only sentencing he sought, this claim of error is moot.

Appellant next claims that his guilty plea was not made voluntarily because his

---

16. *Underhill v. Stephenson*, Ky., 756 S.W.2d 459, 461 (1988).

17. Ky., 910 S.W.2d 229 (1995).

trial counsel allegedly did not advise him that he could have entered a RCr 8.09 conditional guilty plea, rather than a RCr 8.08 unconditional guilty plea, and thereby could have raised speedy trial and judge-only sentencing claims upon appeal. As stated above, Appellant ultimately was sentenced by the judge without a jury's recommendation, and thus there is no claim of error in this regard. As to the alleged speedy trial issue, the judge specifically told Appellant during the plea colloquy that by entering his plea he would be waiving a "speedy and public trial," even though there is no legal requirement that a judge do so. Thus, Appellant cannot claim that he was not informed that he waived his right in this matter unknowingly and involuntarily.

Appellant next claims that the case must be remanded for an evidentiary hearing to determine whether Appellant's trial counsel was ineffective for allegedly not informing Appellant that he could plead guilty conditionally pursuant to RCr 8.09 and thereby preserving a speedy trial claim for appeal. As stated above, the trial judge discussed the speedy trial waiver during the guilty plea colloquy, even though there was no requirement he do so. Thus Appellant's ineffective assistance of counsel claim based upon the alleged speedy trial issue is without merit.

■ Appellant's next claim is that the trial court erred when it overruled his motions to exclude the crime scene video and the crime scene and autopsy photographs. In support of this claim, Appellant contends that this evidence was "irrelevant and prejudicially inflammatory."

Appellant does not allege, however, that this visual evidence failed to portray the crime scene or the victim's injuries accurately, and thus his claim of error must fail.[18]

Appellant next contends that his guilty plea to murder must be vacated because he was not informed of the nature of the crime by the trial court and because the prosecution allegedly failed to establish a factual basis for his guilt of murder. This unpreserved claim of error is addressed sufficiently hereinabove and is patently groundless.

■ Appellant next argues that the robbery, burglary, and sexual abuse convictions are not reliable because the prosecution allegedly did not provide a factual basis to prove the requisite elements of the crimes. Kentucky courts have long held that a guilty plea precludes a post-judgment challenge to the sufficiency of the evidence.[19] Thus, there was no error.

■ Appellant's next claim is that the trial court erred by allowing the prosecution to call the victim's sister to the stand during the penalty phase to describe the deceased Ms. Madden's lifestyle and daily habits. General information about a victim's life, however, is allowed to be admitted during the penalty phase, and thus there was no error.[20]

■ Appellant's next claim is that the trial court erred by admitting allegedly irrelevant and highly inflammatory evidence during the penalty phase of the trial. He contends that the only issue before the trial court in the penalty phase was the

---

**18.** See e.g., Barnett v. Commonwealth, Ky., 979 S.W.2d 98 (a photograph, otherwise admissible, does not become inadmissible because it is gruesome and the crime heinous).

**19.** See e.g., Taylor v. Commonwealth, Ky.App., 724 S.W.2d 223, 225 (1986).

**20.** Templeman v. Commonwealth, Ky., 785 S.W.2d 259, 261 (1990); McQueen v. Commonwealth, Ky., 669 S.W.2d 519 (1984); Campbell v. Commonwealth, Ky., 788 S.W.2d 260, 263 (1990).

existence of two statutory aggravating factors, and that more evidence than was necessary to prove these two factors was admitted. This claim of error is not preserved yet will be reviewed under the standard set forth hereinabove, *supra*, p. 691.

The heinous brutality committed upon the victim by Appellant by its nature reveals evidence that is inflammatory. The prosecution, in proving its case in the penalty phase, was limited by the bare facts of the crime, which are dreadful. Appellant does not contend that the prosecution manipulated, exaggerated, or in any way presented the facts in an inappropriate manner or false light. The prosecution "has a right to prove its case ... even where the defendant pleads guilty." [21] Moreover, it is imperative that a capital sentencer consider all the evidence bearing upon the defendant's character, record, and circumstances of his crime.[22] Thus, there was no error.

Appellant's next claim is that the prosecution improperly stated during formal sentencing that because Appellant had been charged with attempted escape while awaiting trial that any period of incarceration would be a "gamble" for the Commonwealth. The prosecutor made this statement after the defense had made its argument in mitigation of the death sentence. Appellant contends that this statement deprived him of his right to a fair and rational sentencing hearing. Appellant, however, neglects to mention two significant facts. First, the initial mention of the escape charge came not from the prosecution, but from defense counsel in a motion made prior to the penalty phase. Second, the judge had already fixed Ap-

pellant's penalty at death when the statement was made. Thus, there was no error.

Appellant's next claim is that he was denied a fair and rational sentencing hearing because the prosecution was allowed to argue that Appellant showed no remorse for committing the crimes. The prosecution made this argument after Appellant had expressed his regret for committing the crimes. Specifically, the prosecutor argued that Appellant's actions immediately following the commission of the crimes indicated a lack of remorse. A prosecutor is allowed to urge the judge to reject a defendant's remorse claim,[23] however, and thus there was no error.

Appellant next contends that the trial court erred by refusing to instruct on all Appellant's tendered mitigating circumstances. Appellant's argument that a judge must formally instruct himself as if he were a jury is without merit and will not be addressed further.

Appellant's next claim is that prosecutor's closing comments and the trial courts comments at final sentencing prevented his mitigating evidence from being considered. This claim of error lacks merit and thus will not be addressed further.

Appellant next contends that his death sentence must be vacated because it was not the result of rational sentencing but of passion and prejudice. This claim of error likewise is devoid of merit and will not be further addressed.

Appellant's next claim is that his convictions for murder, robbery, and burglary violate the prohibition against double jeop-

**21.** *Gall v. Commonwealth,* Ky., 607 S.W.2d 97, 107 (1980).

**22.** *See e.g., Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

**23.** *McQueen v. Scroggy,* 99 F.3d 1302 (6th Cir.1996).

ardy. Appellant concedes that a similar argument was rejected by this Court in *Mills v. Commonwealth*,[24] but urges this Court to revisit the argument and reverse *Mills*. We decline to do so.

Appellant's next claim is that the trial court should have dismissed the indictment or precluded imposition of the death penalty because the prosecution opposed certain defense funding requests yet eventually withdrew its opposition. This claim of error is without merit and will not be discussed further herein.

Appellant's next claim is that the death penalty is "arbitrary and disproportionate," both under his particular circumstances and in comparison with similar cases. Although the defense presented an abundance of mitigating evidence, the aggravating evidence was substantial. As stated in *McQueen v. Scroggy*,[25] in a proportionality review,

> It is not simply whether other people have received the death penalty for crimes similar to McQueen's; it is also whether McQueen's death sentence is disproportionate to McQueen's crime. The death penalty is required by the Constitution to be an individualized sanction based on both the nature of the crime and the criminal. McQueen received such an assessment. That the decision was adverse does not make it unconstitutional.[26]

Considering the extremely brutal nature of the murder at issue here, it cannot be said that the penalty Appellant received was inappropriate. Moreover, per KRS 532.075(3)(c), Appellant's penalty is not excessive or disproportionate to the penalty imposed in similar cases. The particular means of the killing, that the victim was stabbed at least twenty-four times, sliced, perforated, carved, bitten, sexually mutilated, tortured, beaten, had her hair ripped out by the roots, and disemboweled are significant to this determination. As such, there was no error.

Appellant next claims that the death penalty as applied in Kentucky is discriminatory, arbitrary, and disproportionate. This claim has no factual basis in the record. As such, further consideration is not warranted.

Appellant next argues that there is insufficient statutory guidance for imposition of the death penalty. Similar arguments were made and rejected in other death penalty cases,[27] and we likewise reject the argument here.

Appellant's next claim is that the death penalty should be barred in this case because of "residual doubt" about his mental state, his understanding of the crimes to which he pled guilty and the effect of that plea, and the reliability of the plea. These individual issues have already been addressed above and will not be considered further herein.

Appellant's final claim of error is that the cumulative effect of the alleged preceding errors requires that his convictions and sentences be set aside. Any error in this case was purely technical and nonprejudicial. Thus, Appellant's cumulative error argument does not warrant reversal.

For the foregoing reasons, the judgment of the Floyd Circuit Court is affirmed.

24. Ky., 996 S.W.2d 473 (1999).

25. 99 F.3d 1302 (6th Cir.1996).

26. *Id.* at 1334.

27. *See e.g., Foley v. Commonwealth*, Ky., 942 S.W.2d 876, 890 (1996); *Haight v. Commonwealth*, Ky., 938 S.W.2d 243, 253 (1996).

LAMBERT, C.J., and GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion in which COOPER, and STUMBO, JJ., join.

Dissenting Opinion by Justice KELLER.

I respectfully dissent from the majority opinion, and I would vacate Appellant's guilty pleas, reverse the judgment of the Floyd Circuit Court, and remand these indictments to the trial court for further proceedings because the record in this case is silent as to whether Appellant knowingly and voluntarily waived two (2) rights guaranteed him by the United States Constitution—i.e., his right to trial by jury and his right against self-incrimination.

More than thirty (30) years ago, in *Boy-. kin v. Alabama*,[1] the United States Supreme Court reversed Boykin's criminal convictions after finding that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."[2] In doing so, the Court succinctly identified what we now know as a defendant's *"Boykin* rights" and held that a valid guilty plea requires an affirmative, on-the-record waiver of these important rights:

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third is the right to confront one's accusers. *We cannot presume a waiver of these three important federal rights from a silent record.*[3]

*Boykin* further explains that the serious consequences of a guilty plea require that the record reflect the waiver:

What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to makes sure he has a full understanding of what the plea connotes and of its consequences. When the judge discharges that function, he leaves a record adequate for any review that may be later sought and forestalls the spinoff of collateral proceedings that seek to probe murky memories.[4]

In the case at bar, the trial court did not require Appellant to complete a written guilty plea form,[5] and thus the only evidence in this record as to Appellant's waiver of his rights appears in the transcript of

---

1. 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

2. *Id.* at 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279.

3. *Id.* at 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–280 (citations omitted and emphasis added).

4. *Id.* at 395 U.S. 238, 243–244, 89 S.Ct. 1709, 1712–1713, 23 L.Ed.2d 274, 280 (citations omitted).

5. Although the Rules of Criminal Procedure do not require a defendant to file a written

petition to enter a guilty plea, our rules do require that certain *Boykin* rights be waived in writing, *see* RCr 9.26(1) ("Cases required to be tried by jury shall be so tried *unless the defendant waives a jury trial in writing* with the approval of the court and the consent of the Commonwealth," (emphasis added)), and written Motions to Enter Guilty Pleas are standard practice in most courts, *see* AOC Form No. 491. Perhaps the time has come to incorporate prevailing practice into our Rules of Criminal Procedure.

the guilty plea colloquy between the trial court and Appellant. During that colloquy, the trial court made an abbreviated inquiry into Appellant's understanding of the Constitutional rights that he was waiving with his plea of guilty:

> Trial Court: Mr. Johnson, your counsel has indicated to the Court that you wish to change your previously entered not guilty pleas on the indictments which have been issued against you. I want to inform you, Sir, at this time that if you do in fact change your pleas that you will be waiving certain rights guaranteed to you by the Constitution. Among the rights that you would be waiving, Sir, would be the right to a speedy and public trial; at which time you would be represented by counsel and counsel would be appointed for you if you could not afford to do so; and the right to require the Commonwealth to prove your guilt beyond a reasonable doubt. Do you understand that you would be waiving that right?
>
> Defendant: Yes, Sir.
>
> Trial Court: Do you likewise understand that you would be waiving the right to confront and cross-examine any witnesses against you?
>
> Defendant: Yeah.
>
> Trial Court: Do you further understand that you would be waiving the right to present evidence in your own defense, including the right to subpoena witnesses at no cost to you if you could not afford to do so?
>
> Defendant: Yes.

Although, in subsequent proceedings in this matter, the trial court indicated its belief that it "went a little ... farther than what was necessary in the taking of Mr. Johnson's plea," and suggested that it "went into excessive detail with [Mr. Johnson] concerning the entry of [his] plea ... [and] his Constitutional rights to a speedy trial and other Constitutional rights," it appears that the plea colloquy covered just one (1) of the three (3) *Boykin* rights and failed even to mention the words "self-incrimination" or "jury." Accordingly, the record here is silent as to whether Appellant waived his right to trial by jury [6] or his right against self-incrimination, and the conspicuous silence as to these *Boykin* rights creates an invalid guilty plea.[7] Ap-

---

**6.** I realize that the trial court mentioned "the right to a speedy and public trial," during the plea colloquy, but this phrasing conspicuously fails to address Appellant's waiver of his right to a *jury* trial. And, I am also aware that the previous appeal from this indictment in *Commonwealth v. Johnson*, Ky., 910 S.W.2d 229 (1995) illustrates that the issue of whether a jury or the trial judge would decide Appellant's punishment was heavily litigated in this case. However, I would point out that although the motions, briefs, and other documents filed in the trial court and in this Court inevitably implicated Appellant's right to a jury trial, those pleadings were filed by Appellant's counsel, not Appellant himself, and the right to trial by jury is personal to the defendant. If the only *Boykin* right omitted during the trial court's plea colloquy was Appellant's right to trial by jury, I would likely vote to remand this case to the trial court for an evidentiary hearing to determine whether Appellant was cognizant of his right to trial by jury and consented to waiver of that right, *see United States v. Garrett*, 727 F.2d 1003 (11th Cir.1984). Here, however, the record is also silent as to Appellant's waiver of his right against self-incrimination, and that error, standing alone, requires reversal.

**7.** The inadequacy of the guilty plea colloquy in this case suggests to me that this Court should consider adoption of a new Rule of Criminal Procedure requiring a trial court to advise a defendant of the defendant's *Boykin* rights and to make a finding that the defendant has waived each of those rights before accepting a plea of guilty. Such a rule would constitute a "bookend" to RCr 3.05, which requires courts to caution the accused at his or her initial appearance before the court and to advise him or her of certain rights, and

pellant's guilty plea may have been knowing and voluntary, but this Court cannot discern whether it was from the record before us. As a reviewing court, we have no way of knowing from a silent record whether Appellant knowingly and voluntarily waived his *Boykin* rights by entering a guilty plea, and I would thus reverse the judgment of the Floyd Circuit Court, vacate Appellant's guilty pleas, and remand these indictments to the trial court for further proceedings.

COOPER and STUMBO, JJ., join this dissenting opinion.

should help to avoid future omissions such as the ones that occurred here.